**UNITED STATES BANKRUPTCY COURT**
**SOUTHERN DISTRICT OF FLORIDA**
**MIAMI DIVISION**
www.flsb.uscourts.gov

In re:

942 Penn RR, LLC,                                  Case No. 22-14038-LMI
                                                   Chapter 11

       Debtor.

_____/

**MOTION FOR APPOINTMENT OF CHAPTER 11 TRUSTEE AND OBJECTION**
**TO DEBTOR'S MOTION FOR VOLUNTARY DISMISSAL OF CHAPTER 11 CASE**

> **Expedited Hearing Conditionally Requested**
> For the reasons set forth below, the creditors of this estate are concerned that the Debtor's current fiduciaries may be using cash collateral without proper authorization. Therefore, in order to avoid immediate and irreparable harm to the estate, movant requests that the Court set this matter for hearing at the same time as the Debtor's motion to dismiss. However, movant believes that allowing more time for creditors and interested parties to appear in this case and to be heard on these issues outweighs the potential harm to the estate in any brief delay. Therefore, expedited relief is only sought to the extent the Court considers dismissal on an expedited basis.

Secured creditor, 1250916 Ontario Limited, by and through undersigned counsel, moves the Court for the entry of an Order (the "Motion") appointing a chapter 11 trustee, and objects to the *Motion for Voluntary Dismissal of Chapter 11 Case* [ECF No. 33] filed by the debtor, 942 Penn RR, LLC, and in support thereof, respectfully states as follows:

**Introduction**

The Court is no stranger to the purported fiduciaries of this estate. Setting aside for a moment their dilatory litigation tactics, the Debtor's principals, Raz Ofer and Robert Mendez, have used this Debtor as an engine of fraud on at least three separate, relevant occasions that necessitate the appointment of a chapter 11 trustee as in the best interests of the estate. First, in a blatant attempt to avoid a secured creditor's enforcement of its assignment of rents in foreclosure court, Mr. Ofer offered false testimony concerning a sham lease transaction between the Debtor

1

and entity wholly owned by Messrs. Ofer and Mendez. Notably, as of now, the Debtor and Mr. Ofer are not advancing the sham lease before this Court. Then, having been found in contempt for this brazen fraud, Messrs. Ofer and Mendez (with the assistance of the Debtor's own attorney of record) sought to foreclose the Debtor's interest in its sole asset on not one, but two separate occasions (including as recently as a month before the filing of this bankruptcy case). As if this were not enough, the State of Florida is currently prosecuting Mr. Ofer for felonious fraud for presenting hundreds of thousands of dollars in false checks to retailers drawn on this Debtor's accounts.

There is more, to be certain. But the simple fact remains that the Debtor cannot continue to be managed by these actors. They repeatedly prove that they will not serve the estate's best interests and are hopelessly conflicted from serving as estate fiduciaries. The latest evidence: having realized that they are not allowed to pay themselves from the creditors' cash collateral in chapter 11, they no longer seek the protections of this Court. Dismissal is not appropriate under the circumstances. Instead, this case requires an independent fiduciary to marshal the estate's assets for the benefit of all of the estate's stakeholders.

### Jurisdiction, Venue, and Predicate

1.    This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 157 and 1334. This is a core proceeding pursuant to 28 U.S.C. § 157(b).

2.    Venue is proper before this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.    The statutory predicate for the relief requested is sections 1104 and 1112 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code"). The procedural predicate for the relief requested is Rules 1017, 2007.1, and 9014 of the Federal Rules of

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

Bankruptcy Procedure (the "Bankruptcy Rules"), Rules 1017-1 and 9014-1 of the Local Rules of the United States Bankruptcy Court for the Southern District of Florida.

## Background

4.      942 Penn RR, LLC (the "Debtor") holds title to real property located at 942 Pennsylvania Avenue, Miami Beach, Florida 33139, which, according to the Miami-Dade County Property Appraiser, is zoned for multifamily use and contains 25 living units (the "Real Property").

5.      The Debtor operates the Real Property as a short-term rental property offering one bedroom and two bedroom apartments for as low as $85 per night and as much as $688 per night depending on the season.[1]

6.      The Debtor's equity interests are held by Raz Ofer and Robert Mendez and the two men are co-managers of the entity.

7.      According to the Debtor [ECF No. 5], Mr. Ofer is designated as the responsible party to act on behalf of the Debtor in this bankruptcy case.

I.    The Quitclaim Deed, the Existing Immokalee Mortgage, and the Ontario Loan

8.      The Debtor acquired title to the Real Property via that certain *Quit-Claim Deed* executed by J E Bley Overseas Trade of South Florida, Inc. ("JE Bley") on September 25, 2017.

9.      At the time of the transfer to the Debtor, that certain *Mortgage* (the "Immokalee Mortgage") executed by JE Bley in favor of Immokalee Real Estate Holdings, LLC ("Immokalee") encumbered the Real Property.

---

[1] According to https://www.booking.com/hotel/us/south-beach-luxury-apartments.html. Last visited 6/1/2022.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

10.     Thereafter, on October 17, 2017, the Debtor executed and delivered that certain *Promissory Note* (the "Ontario Note") made payable to 1250916 Ontario Limited ("Ontario") in the principal amount of $1.2 million (the "Ontario Loan").

11.     In order to secure the indebtedness owed to Ontario under the Ontario Note and Ontario Loan, the Debtor executed and delivered a *Mortgage and Security Agreement* (the "Ontario Mortgage") as well as an *Assignment of Leases and Rents* (the "Ontario Assignment" and together with the Ontario Mortgage and all other documents executed in connection with the Ontario Loan, the "Ontario Loan Documents"), each dated as of October 17, 2017, and each of which were recorded on November 2, 2017 at OR Book 30742, Page 2881 and Page 2897, respectively.

12.     In connection with the Ontario Loan, Ontario ordered a title commitment from Stewart Title Guaranty Company.

13.     Schedule B-1 of the title commitment, among others, required the following instrument filed and recorded in order to insure Ontario's interest:

Record the Release of the insured property from the Mortgage recorded 04/05/2017, in Official Records Book 30484, Page 3140, of the Public Records of Miami-Dade County, Florida, in the original principal amount of $310,000.00 from J.E. Bley Overseas Trade of South Florida, Inc. to Immokalee Real Estate Holdings, LLC., a Florida Corporation. (previous owner)

14.     The Ontario Loan closed on October 17, 2017, as evidenced by that certain Closing Disclosure (the "Ontario Loan CD") executed by the Debtor.

15.     The Ontario Loan CD reflects that the settlement agent escrow $315,000 of the Ontario Loan proceeds to payoff and satisfy the Immokalee Mortgage.[2]

16.     Those funds never reached Immokalee.[3]

---

[2] The Closing Disclosure and Settlement Statement reflect that the escrow amount was $315,000.00. However, the parties to the Ontario Action (defined below) have stipulated that the escrow amount was actually $400,000.00.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

II.   <u>The Immokalee Action</u>

17.   Instead of satisfying the Immokalee Mortgage as required by the Ontario Loan, on November 20, 2017, suspended attorney Kenneth Eric Trent filed a quiet title action on behalf of the Debtor against Immokalee initiating the action styled *942 Penn RR LLC v. Immokalee Real Estate Holdings, LLC*, Case No. 17-26820 CA 21(the "Immokalee Action"), pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Circuit Court").

18.   Immokalee filed a *Counterclaim and Third Party Complaint* in the Immokalee Action seeking to foreclose the Immokalee Mortgage. Immokalee Action D.E. 8.

19.   Judge David Miller is presiding over the Immokalee Action (despite at least three motions to disqualify Judge Miller made within the past year by the Debtor).

20.   To date, the Debtor's efforts have been unsuccessful in the Immokalee Action. And all four of its appeals have been dismissed by the Third DCA.

21.   Judge Miller has granted summary judgment in favor of Immokalee in the Immokalee Action and all that is left for the Court is to enter final judgment.

III.   <u>The Ontario Action</u>

22.   On October 16, 2019, Ontario filed an action against the Debtor seeking, *inter alia*, to foreclose the Ontario Mortgage initiating the action styled *1250916 Ontario Limited v. 942 Penn RR LLC* (the "Ontario Action") pending in the Circuit Court.

23.   Judge Antonio Arzola presides over the Ontario Action and, as noted above, recently disposed of the majority of the dispute on summary judgment. Ontario Action D.E. 191.

---

[3] The Debtor and Ontario dispute the facts surrounding the Immokalee escrow. But there is no dispute that the Ontario lent the money, that the funds should have been disbursed to Immokalee, and that the disbursement never occurred. As more fully described below, the Circuit Court narrowed the dispute as to whether Ontario may be held liable for Mr. Kagan's actions while acting in his capacity as settlement agent for the Ontario Loan transaction and escrow agent over the Immokalee escrow.

5

24.    As noted above, the only issue left for the Circuit Court in the Ontario Action is whether Ontario should be liable for the purported actions of Mr. Kagan in allegedly failing to deliver the $400,000 escrow from the Ontario Loan to the Debtor.[4]  Id.

25.    However, it is also worth pointing out that Judge Arazola went out of his way in his summary judgment order to make the following findings of fact regarding the Ontario Loan and disputes arising therefrom:

- There is no genuine issue of material fact that Ontario funded the entire $1.2 million. Id. at ¶ 2.

- No evidence at summary judgment (i.e., after the close of discovery) that Ontario stole the $400,000 escrow, instructed the agent to steal the $400,000 escrow, or otherwise conspired with the agent; and any claim or allegation by Mr. Ofer in affidavits to that effect are speculative and conclusory and not supported by evidence. Id. at ¶¶ 4 and 6.

-  All evidence indicates that if the $400,000 escrow was misappropriated, it was done to the exclusion of Ontario. Id. at ¶ 7.

- "…it would make no sense for Ontario to steal the $400,000.00 it indisputably funded to its own detriment.  There is no evidence that supports that such an event took place." Id. at ¶ 9.

26.    Again, the sole issue in the Ontario Action is whether Ontario may be liable for Mr. Kagan's alleged actions regarding the $400,000.00.

---

[4] It is worth noting that those funds do not actually belong to the Debtor; but rather, earmarked to satisfy the Immokalee Mortgage in connection with the making and closing of the Ontario Loan. The impact is important because even if Mr. Kagan stole the escrow (and the Debtor produced documents that the funds were disbursed to the Debtor), the damage to the Debtor would be limited to the amount necessary to satisfy the Immokalee Mortgage – a claim which it vehemently disputes to this date.

6

27.     It is also worth noting that in opposition to summary judgment, Mr. Ofer submitted an affidavit with an electronic mail communication purportedly from Mr. Kagan, the authenticity of which Judge Arazola questioned and permitted Ontario to take further discovery regarding authenticity, metadata and other information surrounding the email. Id. at ¶¶'s 13-17.

28.     The Debtor filed its bankruptcy case on the eve of a May 24, 2022 hearing in the Ontario Action regarding Ontario's request to inspect Mr. Ofer and the Debtor's counsel's computers regarding the alleged email communication. [Ontario Action D.E. 194 and 198].

IV.    The Cash Collateral Fraud in the Immokalee Action

29.     On May 29, 2020, Immokalee exercised its rights in the collateral assignment of leases, rents and profits in the Immokalee Mortgage by delivering a demand to the Debtor. *See* DE 142, Ex. E, Immokalee Action.

30.     On July 13, 2020, Immokalee filed a *Motion for Order Requiring Payment of Rents* [Immokalee Action DE 142] (the "Rents Motion").

31.     Judge Miller conducted a hearing on the Rents Motion on August 13, 2020 and granted the relief.

32.     On August 14, 2020, the Debtor, represented by Mr. Alan Grossman, filed an *Emergency Motion for Protective Order, to Amend Order, and for Sanctions* [DE 162] in the Immokalee Action, which pleading Mr. Ofer verified under the penalty of perjury.

33.     In the verified motion, Mr. Ofer avers as follows regarding the Debtor's cash collateral:

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

8.    However, the fact is that there are no tenants nor occupants of the Subject Property who are obligated in any way to pay rent to 942 Penn, as the entirety of the Subject Property, had been previously rented by 942 Penn to a third party. Specifically, in February, 2020, 942 Penn entered into a five-year lease of the Subject Property with Mortgage Holdings 2018, LLC, a Florida limited liability company. That lease, a true and correct copy of which will be submitted to the Court by a supplemental filing, provided for rent for the Subject Property to be paid in advance for 5 years in the amount of approximately $2,000,000.00. The advanced 5-years of rent of approximately $2,000,000.00 was paid in full from Mortgage Holdings, 2018, LLC, to 942 Penn in February, 2020, and such funds was then promptly paid by 942 Penn to the General Contractor who performed the extensive renovations to the Subject Property pursuant to a construction contract between 942 Penn and the General Contractor.

34.    In response to the verified motion, Judge Miller issued an *Order to Show Cause* [Immokalee Action D.E. 163] requiring Messrs. Ofer and Mendez to appear before the Court on August 17, 2020 to show cause why they should not be held in contempt of Court.

35.    In connection with the show cause order, the Debtor served a copy of a purported unrecorded *Commercial Gross Lease* dated February 1, **2020** by and between the Debtor, as landlord, and MH2018, as tenant, for an initial term of 5 years, commencing February 1, **2019**.

36.    Mr. Ofer appeared before Judge Miller at the show cause hearing and provided testimony regarding the purported lease under oath.

37.    At the hearing, Mr. Ofer testified to the following:

- Messrs. Ofer and Mendez own the Debtor. Immokalee Action 8/17/20 OSC Hr'g Tr. at 11:22.

- Messrs. Ofer and Mendes own MH2018. Id. at 11:22.

8

- MH2018 was the purported tenant under the *Commercial Gross Lease*. Id. at 11:15.

- MH2018 was the contractor for the Debtor's project. Id. at 20:23-24.

- The $2 million rent was prepaid by MH2018 to the Debtor in February, 2019.  Id. at 13:1-3.

- As to the purpose of the *Commercial Gross Lease*: "For any fail-safe, we always do things on separate tenancy." Id at 11:15-16.

- "For everything that you do, you set up a different LLC." Id. at 20:2-3.

38.     Thereafter, the Debtor filed a purported bank statement of the Debtor from BHI Swiss Private Banking for Account 7**39 for the February 2019 period showing a $6,253.988.00 balance. [Immokalee Action D.E. 172].

39.     The Debtor never turned over the rents to Immokalee.

40.     Mr. Ofer was found to be in contempt of Court.  Immokalee Action D.E. 171.

41.     Judge Miller found that the Mr. Ofer's testimony regarding the purported lease transaction was "*misleading, false, and intended to deceive the Court*." Id. (emphasis added).

42.     The Debtor appealed, sought rehearing, and sought stays regarding the rents issue.

43.     After months of litigation, Immokalee agreed to withdraw the rents motion without prejudice and set aside and vacate the rent orders in exchange for the Debtor's agreement to drop the pending appeals. Immokalee Action D.E. 233.

V.     Debtor's Fiduciaries Seek to Foreclose the Debtor's Interest in the Real Property, **Twice**

44.     On September 9, 2020, just three weeks after the Show Cause hearing in the Immokalee Action, counsel of record for the Debtor in the Immokalee Action and the Ontario Action, Alan Bryce Grossman, filed a complaint on behalf of ***MH2018*** against the ***Debtor***

9

seeking to foreclose a $8.675 million claim of lien initiating the action styled *Mortgage Holdings 2018, LLC v. 942 Penn RR, LLC, et al.*, Case No. 20-019347 CA 22 (the "MH2018 Action") pending in the Circuit Court.

45.     In support of the MH2018 Action, the plaintiff attached the following documents to its Complaint [MH2018 Action D.E. 2]:

- An unrecorded, purported *Construction Agreement* dated February 28, 2018 by and between MH2018 and the Debtor and signed by Messrs. Ofer and Mendez on behalf of MH2018 and the Debtor;[5]
- A February 8, 2015 *Notice of Commencement* recorded by the previous owner (JE Bley) against the Real Property with no contractor named;
- A September 9, 2020 *Amended Notice of Commencement* signed by Messrs. Ofer and Mendez on behalf of the Debtor and in favor of contractor, DOT Construction, attempting to relate back to the 2/8/15 Notice of Commencement;[6] and
- A September 2, 2020 Claim of Lien signed by Messrs. Ofer and Mendez on behalf of MH2018 and alleging that the Debtor owes MH2018 $8.675 million.

46.     Notably, **Mortgage Holdings 2018, LLC**, a company formed in February 14, **2018**, and which purportedly holds a *Mortgage Deed* executed by Messrs. Ofer and Mendez on behalf of the Debtor on March 8, **2018**, did not seek any relief in the MH2018 Action on that indebtedness.[7]

47.     MH2018 never served the complaint and voluntarily dismissed the MH2018 Action on November 21, 2021.

48.     Thereafter, on April 14, 2022, MH2018 sought to intervene in the Immokalee Action to enforce a *Consent Judgment for Foreclosure* against the Debtor and in favor of

---

[5] Three weeks earlier Mr. Ofer testified: "There was a very brief agreement, but I don't think it's relevant because we own the property." See 8/17/20 Order to Show Cause Tr. at 22:6-7 in the Immokalee Action.

[6] Mr. Ofer testified that DOT Construction was a "qualifier," i.e., a general contractor that Messrs. Ofer and Mendez used to pull permits for construction work they performed themselves. See 8/17/20 Order to Show Cause Tr. at 18:23-19:17 in the Immokalee Action.

[7] The 2018 Mortgage Deed secures a $50,000 indebtedness purportedly owed to MH2018 by the Debtor.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

MH2018 for the sum of $11,798,000 executed by Messrs. Ofer and Mendez on April 14, 2022. [Immokalee Action D.E. 330].

49.     That is to say that Messrs. Ofer and Mendez sought to have Judge Miller enter judgment in their favor against the Debtor wiping out all other interests and setting a foreclosure sale to satisfy that claim ahead of all others.

## VI.    Mr. Ofer Charged with Fraud Related to this Debtor

50.     The State of Florida charged Mr. Ofer, *in his capacity as an officer of this Debtor*, with felonies of organized fraud, scheme to defraud, and grand theft. *See The State of Florida v. Raziel Ofer*, Case No. 13-2019-CF-008963-0001-XX, pending in the Circuit Court.

51.     In particular, according to The State of Florida, Mr. Ofer placed in excess of $200,000 in orders at various locations of The Home Depot, paid with the Debtor's checks, and then promptly stopped payment on those checks. See Information Sheet attached as **Exhibit 1.**

52.     The arrest report indicates that Mr. Ofer engaged in similar conduct with respect to Lowes and Sears. See Arrest Affidavit attached as **Exhibit 2**.

## VII.    Ad Valorem Real Estate Taxes

53.     In connection with the Ontario Loan closing, the 2017 ad valorem real estate taxes were paid.

54.     Thereafter, the Debtor did not pay real estate taxes for the 2018, 2019 and 2020 calendar years.

55.     Tax certificates issued for 2018 on June 1, 2019 (No. 8280) and 2019 (No. 9115) on June 15, 2020.

56.     A tax deed application (No. 210159) for 2018, 2019, and 2020 made on or about April 7, 2021.

11

57.     Finally, on July 7, 2021, the Debtor paid off the ad valorem real estate taxes for the three delinquent calendar years.

58.     The Debtor is delinquent for 2021 tax year and tax certificate will issue shortly.

59.     The Debtor did not notice Miami-Dade County of the bankruptcy case.

VIII.    The Debtor's Bankruptcy Case

60.     The Debtor filed a voluntary petition for relief under Chapter 11 of title 11 of the United States Code, 11 U.S.C. §§ 101 et seq. (the "Bankruptcy Code") on May 24, 2022.

61.     The Debtor lists the value of the Real Property as $1,617,630.00 on Schedule A. ECF No. 1.

62.     The Debtor does not list any cash on hand and identifies no bank accounts on Schedule B. Id.

63.     Conspicuously missing from the Debtor's disclosures are the BHI account and the $6.25 million that the Debtor represented to the Circuit Court in the Immokalee Action was on deposit as of February 2019.  Immokalee Action D.E. 172.

64.     The Debtor's Schedule D lists Ontario as a secured creditor in the amount of $800,000 and as disputed, contingent, and unliquidated. ECF No. 1 at 2.1.

65.     To be certain, Ontario claims that the Debtor owes $1,200,000 plus unpaid interest, attorney's fees and costs.

66.     Notwithstanding the status of the Immokalee Action, the Debtor identifies Immokalee's secured claim as disputed and in an unknown amount. Id. at 2.5.

67.     The Debtor also identifies Creative Directions, Inc. as holding an *undisputed, non-contingent, and liquidated* secured claim in an amount equal to $8,675,000.00. Id. at 2.2. This is the only undisputed claim in the Debtor's schedules.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

68.     Creative Directions is a new player in the multiple foreclosure actions against the Debtor, but from a review of public records available with the State of Florida Secretary of State, Mr. Ofer is listed as President as of December 21, 2021.

69.     The Debtor identifies MH2018 as holding two disputed, non-contingent, liquidated secured claims of $8,675,000. Id. at 2.6 and 2.7.

70.     The Debtor identifies two other smaller lienholders as disputed. Id. at 2.4 and 2.8.

71.     The Debtor identifies four (4) other unsecured creditors in unknown amounts and all disputed, contingent and unliquidated; including G Proulx, LLC (Id. at 3.3) and Marjam Supply of Florida LLC (Id. at 3.5).

72.     The Home Depot is not listed as a creditor; nor is Miami-Dade County; nor is Florida Power and Light; nor is the State of Florida Department of Revenue; nor is the Internal Revenue Service.

73.     As of the date of this filing, there is no Statement of Financial Affairs on the docket.

74.     In the Debtor's *Case Management Summary* [ECF No. 16], the Debtor states that the Debtor's principals have not received any compensation in the year preceding the bankruptcy filing.

75.     The summary does not include the gross income figures for the Debtor for this year or the previous calendar year. Id.

76.     The summary states that the Debtor has no employees. Id.

77.     The Debtor's summary offers internally conflicting information regarding the secured claims. For example:

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

- The summary states that Ontario is only claiming $800,000; but Ontario is claiming $1,200,000 plus applicable interest and fees.

- The summary states that Creative Directions asserts a first priority lien on the Real Property in an amount of $8,675,000; but just a month prior to the Petition Date, Messrs. Ofer and Mendez purportedly consented to judgment on this claim of lien in a larger amount in favor of MH2018.

- It states that Marjam Supply and G Proulx assert secured claims; but both are listed as unsecured creditors in the Debtor's schedules.

78.     The Debtor filed its *Expedited Motion for Authorization to Use Cash Collateral, Retroactive to the Petition Date, and Provide Adequate Protection* [ECF No. 27] (the "Cash Collateral Motion") on May 31, 2022.

79.     The Court conducted a hearing on the Cash Collateral Motion on June 2, 2022 at 9:30 a.m.

80.     The Debtor offered no evidence in support of the Cash Collateral Motion.

81.     The Debtor offered no support for any expenditure proposed in the budget.

82.     The Debtor did not identify Immokalee as having an interest in the cash collateral despite the rent dispute in the Immokalee Action.

83.     The Debtor did not serve the Cash Collateral Motion or the Notice of Hearing on Immokalee.

84.     Despite the fact that the summary states that the Debtor has no employees, the budget appended to the Cash Collateral Motion seeks to pay 5 employees, including Messrs. Ofer and Mendez.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

85.     The other three employees are insiders of the Debtor including Mr. Mendez's girlfriend and children.

86.     At the hearing on the Cash Collateral Motion, Ontario advised that it was not opposed to the use of cash collateral on an emergent basis to avoid immediate and irreparable harm, but that from its discussions (which it initiated) with Debtor, Ontario was unable to discern what expenses were immediate and necessary.

87.     The Court advised the Debtor that payments to insiders from cash collateral was inappropriate.

88.     Thereafter, the Debtor withdrew its Cash Collateral Motion [ECF No. 32] and moved to dismiss the chapter 11 case [ECF No. 33] voluntarily.

### Relief Requested

89.     Ontario seeks the entry of an Order appointing a chapter 11 trustee and sustaining its objection to the dismissal of this chapter 11 bankruptcy case.

### Basis for the Relief Requested

### I. Grounds Exist to Appoint a Chapter 11 Trustee Pursuant to Section 1104(a) of the Bankruptcy Code

90.     The judicial records cited above and appended hereto present clear and convincing evidence that cause exists for the appointment of a trustee and that appointment of a trustee is in the best interests of creditors. In re Sundale, Ltd., 400 B.R. 890, 900-01 (Bankr. S.D. Fla. 2009) (finding that "[w]hile any one issue may not warrant appointment of a trustee, the court may consider the cumulative or collective impact of the alleged problems or issues in making its decision."). The weight of the evidence in favor of dispossessing Messrs. Ofer and Mendez is insurmountable.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**A. Section 1104(a) of the Bankruptcy Code**

91.    Section 1104(a) of the Bankruptcy Code provides:

> (a) At any time after the commencement of the case but before confirmation of a plan, on request of a party in interest or the United States trustee, and after notice and a hearing, the court shall order the appointment of a trustee –
>
>> (1) for cause, including fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management, either before or after the commencement of the case, or similar cause, but not including the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor; or
>>
>> (2) if such appointment is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.

11 U.S.C. § 1104(a).

**B. "Cause" Exists to Appoint a Chapter 11 Trustee Pursuant to Section 1104(a)(1) of the Bankruptcy Code**

> **i. Standard for "Cause" under Section 1104(a)(1) of the Bankruptcy Code**

92.    Although there is a presumption in a chapter 11 case that a debtor-in-possession should be permitted to remain in control of a bankruptcy entity, "the appointment of a trustee is a power which is critical for the Court to exercise in order to preserve the integrity of the bankruptcy process and to insure that the interests of creditors are served." *In re SunCruz Casinos, LLC*, 298 B.R. 821, 828 (Bankr. S.D. Fla. 2003) (quotation omitted).   Section 1104(a)(1) of the Bankruptcy Code therefore provides for the appointment of a trustee for "cause." 11 U.S.C. § 1104(a)(1).

93.    "Cause" is defined by Section 1104(a)(1) to include "fraud, dishonesty, incompetence, or gross mismanagement of the affairs of the debtor by current management,

16

either before or after the commencement of the case, or similar cause…."  11 U.S.C. §

1104(a)(1).  Section 1104(a)(1)'s list of conduct qualifying as "cause" for the appointment of a

trustee is non-exhaustive.  *SunCruz Casinos*, 298 B.R. at 828.   And the standard for the

appointment of a trustee is a flexible one.  *See Comm. of Dalkon Shield Claimants v. A.H. Robins*

*Co., Inc.*, 828 F.2d 239, 240 (4th Cir. 1987) ("the concepts of incompetence, dishonesty, gross

mismanagement and even fraud all cover a wide spectrum of conduct") (quotation omitted); 7

Collier on Bankruptcy ¶ 1104.02[3][a] (standard embodied in Section 1104(a)(1) is "flexible").

Whether there exists "cause" to appoint a trustee under Section 1104(a)(1) is a matter for the

discretion of the Court, which must be made on a case-by-case basis.  *In re Ontario Entm't*

*Corp.*, 237 B.R. 460, 472 (Bankr. N.D. Ill. 1999).  However, "[o]nce the court finds that cause

exists under § 1104(a)(1), there is no discretion; an independent trustee must be appointed."

*SunCruz Casinos*, 298 B.R. at 828.

> ii.  **"Cause" for the Appointment of a Trustee Exists in this Bankruptcy**
> **Case**

94.    If the Debtor intends to operate and manage the estate by and through its

designated representative Mr. Ofer (or his partner, Mr. Mendez), "cause" exists to appoint a

chapter 11 trustee based on their self-dealing dealing, fraudulent, dishonest conduct to date.

95.    As set forth above, the purported fiduciaries of this estate have engaged in a

rampant history of fraud for the sole and express purpose of evading the Debtor's legitimate

creditors. By way of non-exclusive example, the Debtor, through Messrs. Ofer and Mendez,

promoted a sham lease transaction with their other wholly owned entity, MH2018 in order to

avoid Immokalee's enforcement of its assignment of rents. Judge Miller held Mr. Ofer in

contempt for the perjury. While the lie itself is disqualifying, the effect is as well. The lease,

even if valid and enforceable, was well below market and deprived the Debtor of its sole revenue

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

stream. If enforced, it would leave the Debtor with no ability to pay its substantial ongoing operating expenses, causing immediate and irreparable harm to the Debtor's estate and its interested stakeholders.

96.     Moreover, the Debtor's principals have twice sought to foreclose out the Debtor's interest in the Real Property; including as recently as a month before the filing of this chapter 11 case. Not to mention its recent attempt to "jump the line" in this bankruptcy case by creating a new entity to hold a fictitious claim of lien that Messrs. Ofer and Mendez now claim is ahead of all other non-insider debts.

97.     In addition, Mr. Ofer used this Debtor's bank account to commit what the State of Florida is characterizing as felonious fraud.

98.     Finally, as if this all were not enough, the Debtor's conduct in this bankruptcy case demonstrates that Messrs. Ofer and Mendez are only interested in serving their own interests ahead of all others. As set forth above, the creation of Creative Directions' "first-priority security interest," the attempt to use the Debtor's creditors' cash collateral to pay insider "employees" ahead of non-insider creditors, and the Debtor's attempt to "duck out" of bankruptcy once Messrs. Ofer and Mendez realized that the Court would not allow them to do so.

99.     Such conduct is not in the best interests of creditors other stakeholders and is sufficient "cause" to appoint a trustee in this case to act as an in a manner consistent with a fiduciary to the parties in interest.

100.     These facts clearly and convincingly demonstrate that an independent trustee is warranted based on the totality of the circumstances. *See Sundale*, 400 B.R. at 901.

18

### C. The Appointment of a Trustee is in the Best Interests of the Estate Pursuant to 1104(a)(2) of the Bankruptcy Code

101.    Even where a court does not find "cause" to appoint a chapter 11 trustee, Section 1104(a)(2) provides a separate basis for the appointment of a trustee where doing so would be in the best interests of the creditors and other stakeholders. *See* 11 U.S.C. § 1104(a)(2). "Section 1104(a)(2) sets forth a flexible standard for appointment of a trustee even when no cause exists" and a bankruptcy court "has particularly wide discretion [to appoint a trustee] under subsection (a)(2)." *In re Bellevue Place Assocs.*, 171 B.R. 615, 623 (Bankr. N.D. Ill. 1994). The standard under subsection (a)(2) is a "lesser standard than that under § 1104(a)(1), which requires that the party requesting appointment of a trustee prove fraud, dishonesty, incompetence or gross mismanagement." *In re Wings Digital Corp.*, 2005 WL 3789334, at *5 (Bankr. S.D.N.Y. May 16, 2005).

102.    "Factors which justify appointment of a trustee under [Section 1104(a)(2)] are highly diverse and in essence reflect the practical reality that a trustee is needed to manage the debtor's affairs." *In re Nartron Corp.*, 330 B.R. 573, 592 (Bankr. W.D. Mich. 2005). These factors include: "(i) the trustworthiness of the debtor, (ii) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation, (iii) the confidence – or lack thereof – of the business community and of creditors in present management, and (iv) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment." *In re Ionosphere Clubs, Inc.*, 113 B.R. 164, 169 (Bankr. S.D.N.Y. 1990) (citations omitted). Additionally, where current management or persons in control of a debtor have engaged in acts that have caused harm to the debtor's estate and its creditors while advancing their personal interests, courts routinely appoint a trustee in the best interests of the creditors and other stakeholders. *See*, *e.g.*, *In re North American Commc'ns, Inc.*, 138 B.R. 175, 179-80 (Bankr.

19

W.D. Pa. 1992); *In re United Church of the Ministers of God*, 74 B.R. 271, 279 (Bankr. E.D. Pa. 1987); *In re Great Northeastern Lumber & Millwork Corp.*, 20 B.R. 610, 611 (Bankr. E.D. Pa. 1982).

103.    Under the facts of this case, the appointment of a chapter 11 trustee would be in the best interests of the creditors and all other stakeholders.  At the present time, the Debtor is operating a short-term rental facility in South Beach. It is unclear from the Debtor's budget attached to the Cash Collateral Motion whether the Debtor is remitting sales tax receipts to the State of Florida Department of Revenue. It is also unclear whether the Debtor has ever filed a United States Tax Return. It almost lost the Real Property to a tax deed.

104.    It has, in the past, attempted to divest control of the revenue stream from the Debtor to another wholly owned entity of the Debtor's insiders pursuant to a sham lease transaction. *See Sundale*, 400 B.R. at 909-910 (noting that in other cases "questionable inter-company transfers, made it unlikely debtor would garner the creditor confidence needed to successfully reorganize."). Current management has attempted to foreclose out the Debtor's interests in the Real Property in favor of their own on two separate occasions. It has also used the Debtor's accounts fraudulently. To say that the business community and creditors has lost confidence in management would be a drastic understatement. To say that current management's honesty is called into question is another gross understatement. Moreover, the Debtor is facing lawsuits by a number of creditors seeking to foreclose their respective interests – it is also evidence of current management's past performance. Despite showing healthy revenues in its proposed budget, current management has not paid a penny to its legitimate non-insider creditors in years.

Stearns Weaver Miller Weissler Alhadeff & Sitterson, p.a.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

105.    Permitting a chapter 11 trustee to marshal the assets, including the revenue stream will provide order and control to what is now an unwieldy process playing out in the state court system. It will not divest Messrs. Ofer and Mendez of their equity interests. Nor will the appointment of a chapter 11 trustee divest them of their purported creditor claims. Rather, it will ensure that all of the estate's interested stakeholders' interests are preserved and protected in accordance with the Bankruptcy Code.

106.    For these reasons, even if the Bankruptcy Court does not find that there exists "cause" to appoint a chapter 11 trustee under Section 1104(a)(1), the Court should appoint a chapter 11 trustee pursuant to Section 1104(a)(2) of the Bankruptcy Code in the best interests of the creditors and all other stakeholders.

**Objection to Voluntary Dismissal**

107.    Debtor invokes the "cause" standard of section 1112(b) of the Bankruptcy Code as its basis for dismissal of the chapter 11 case and blindly states that dismissal is in the best interests of creditors and the estate.

108.    Section 1112(b)(1) of the Bankruptcy Code, in relevant part, provides: "on request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, **for cause unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate**." 11 U.S.C. § 1112(b)(1) (emphasis added).

109.    The Debtor alleges, conclusory, that "cause" exists here to dismiss the case. It argues that its insiders will not be allowed to continue to use the revenue generated by this Debtor without supervision of this Court as the basis for "cause" under section 1112(b)(A)(4).

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

The Debtor also notes that no prejudice will befall the six creditors toiling in state court actions against the Debtor because they will be permitted to continue those fights across the street.

110.    Those arguments are not "cause" for dismissal. Rather, it evidences Messrs. Ofer and Mendez's hopeless conflicts and cause to keep this case before this Court. As discussed more fully, supra, the best interests of creditors and the estate would be better served to allow the Debtor to continue in chapter 11 under the stewardship of an independent fiduciary who can assess the operation of the Debtor, the value of its Real Property, the bona fides of the claims asserted against the estate, and the best path forward for all of the estate's various constituents.

## Conclusion

**WHEREFORE,** Ontario respectfully requests that the Bankruptcy Court enter an Order granting the following relief:

(A)    Scheduling a hearing on this Motion upon an expedited basis;

(B)    Sustaining Ontario's objection to the Debtor's request to dismiss this chapter 11 case;

(C)    Granting this Motion;

(D)    Appointing a chapter 11 trustee to operate and manage the Property pursuant to Sections 1104(a) of the Bankruptcy Code; and

(B)    Granting such other and further relief as the Court deems just and proper.

Dated: June 3, 2022                Respectfully submitted,

STEARNS WEAVER MILLER WEISSLER
ALHADEFF & SITTERSON, P.A.
Museum Tower, Suite 2200
150 West Flagler Street
Miami, Florida 33130
Telephone:    (305) 789-3200
Facsimile:    (305) 789-3395

22

By: ___*/s/  Eric J. Silver*_____
*ERIC J. SILVER, ESQ.*
*Florida Bar No. 057262*
*esilver@stearnsweaver.com*
*Counsel for 1250916 ONTARIO LIMITED*

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that a true and correct copy of the foregoing was served as follows: (a) based on the Court docket, by transmission of Notices of Electronic Filing generated by CM/ECF, on the date the document appeared on the court docket, to those parties registered to receive Notices of Electronic Filing ("NEF") in this case, and (b) by First Class Mail on June 3, 2022, as indicated on the attached Service List.

*/s/ Eric J. Silver*_____
ERIC J. SILVER, ESQ.
Florida Bar No. 057262
*esilver@stearnsweaver.com*

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

**SERVICE LIST**
**Case Nos.: 22-14038-LMI**
**United States Bankruptcy Court, Southern District of Florida**

a) The following parties are registered to receive Notice of Electronic Filing and should have been served through CM/ECF.

- Dan L Gold    Dan.L.Gold@usdoj.gov
- Kenneth L Minerley    ken@minerleyfein.com, litigation@minerleyfein.com;fileclerk@minerleyfein.com;meghan@minerleyfein.com
- Office of the US Trustee    USTPRegion21.MM.ECF@usdoj.gov
- Mark S. Roher    mroher@markroherlaw.com, ECF.markroherlaw@gmail.com;ECF2.markroherlaw@gmail.com
- Eric J Silver    esilver@stearnsweaver.com, jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsweaver.com;mfernandez@stearnsweaver.com

The following parties were served via First Class Mail.

STEARNS WEAVER MILLER WEISSLER ALHADEFF & SITTERSON, P.A.
Museum Tower ▪ 150 West Flagler Street, Suite 2200 ▪ Miami, FL 33130 ▪ (305) 789-3200

#10634675 v4

Label Matrix for local noticing
113C-1
Case 22-14038-LMI
Southern District of Florida
Miami
Fri Jun  3 15:46:37 EDT 2022

1250916 ONTARIO LIMITED
c/o Eric J. Silver, Esq.
150 West Flagler Street
Suite 2200
Miami, FL 33130-1545

942 Penn RR, LLC
942 Pennslyvania Avenue
Miami Beach, FL 33139-5416

G. Proulx, LLC
c/o Kenneth L. Minerley
Minerley Fein, PA
1200 N Federal Highway #420
Boca Raton, FL 33432-2847

1250916 Ontario Limited
Cary A. Lubetsky, Esq.
800 Brickell Avenue, Suite 1501
Miami, FL 33131-3040

1250916 Ontario Limited
c/o Eric Salpeter, Esq.
Salpeter Gitkin, LLP
3864 Sheridan St.
Hollywood, FL 33021-3634

1250916 Ontario Limited
c/o Salpeter Gitkin, LLP
3864 Sheridan Street
Hollywood, FL 33021-3634

942 Pennsylvannia Holdings, LLC
c/o David Winker, Esq.
4270 S. LeJeune Road
Coral Gables, FL 33146

Cary A. Lubetsky, Esq.
800 Brickell Ave., Suite 1501
Miami, FL 33131-3040

Creative Directions, Inc.
c/o Raziel Ofer
942 Pennsylvania Ave.
Miami Beach, FL 33139-5416

Creative Directions, Inc.
c/o Robert Mendez
3701 De Garmo Lane
Miami, FL 33133-6448

DOT Construction
9311 SW 52nd Terrace
Miami, FL 33165-6519

Florida Fair Housing Alliance, Inc.
c/o The Law Offices of Jibrael S Hindi
110 SE 6th Street, Suite 1744
Fort Lauderdale, FL 33301-5000

G. Proulx, LLC
c/o Minerly Frein, P.A.
1200 N. Federal Highway, Suite 420
Boca Raton, FL 33432-2847

Great Waste & Recycling Service LLC
3051 NW 129th St.
Opa Locka, FL 33054-4924

Immokalee Real Estate Holdings LLC
c/o Sordo & Associates, P.A.
3006 Aviation Avenue, Suite 2A
Coconut Grove, FL 33133-3864

Internal Revenue Service
Centralized Insolvency Operation
P.O. Box 7346
Philadelphia, PA  19101-7346

J.E. Bley Overseas Trade South Florida
c/oDavid Winker, Esq.
4720 S. Le Jeune Rd.
Coral Gables, FL 33146-1817

Marjam Supply of Florida, LLC
c/o Malka & Kravitz, P.A.
1300 Sawgrass Corporate Parkway
Suite 100
Fort Lauderdale, FL 33323-2823

Mortgage Holdings 2018 LLC
c/o David Winker, Esq.
4270 S. LeJeune Road
Coral Gables, FL 33146

Mortgage Holdings 2018, LLC
c/o David Winker, Esq.
4720 S. Le Jeune Rd.
Coral Gables, FL 33146-1817

Office of the US Trustee
51 S.W. 1st Ave.
Suite 1204
Miami, FL 33130-1614

Raz Ofer
c/o David Winker, Esq.
4270 S. LeJeune Road
Coral Gables, FL 33146

Robert Mendez
c/o David Winker, Esq.
4270 S. LeJeune Road
Coral Gables, FL 33146

Steven D. Pals, Jr.
c/o Graham Legal, P.A.
Ponce Plaza, Suite 410
814 once de Leon Blvd.
Coral Gables, FL 33134-3049

The Sherwin-Williams Company
2800 Century Parkway, NE
Suite 1000
Atlanta, GA 30345-3110

Mark S. Roher Esq.
Law Office of Mark S. Roher, P.A.
1806 N. Flamingo Road, Suite 300
Pembroke Pines, FL 33028-1032

The following recipients may be/have been bypassed for notice due to an undeliverable (u) or duplicate (d) address.

(u)Miami

(d)Immokalee Real Estate Holdings, LLC
c/o Sordo & Associates, P.A.
3006 Aviation Ave
Suite 2A
Coconut Grove, FL 33133-3864

End of Label Matrix
Mailable recipients    26
Bypassed recipients     2
Total                  28

# Exhibit 1

F19-8963



### IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT
### IN AND FOR MIAMI- DADE COUNTY, FLORIDA   SPRING TERM, 2019

THE STATE OF FLORIDA  v.

   RAZIEL  OFER


  Defendant(s)

**INFORMATION FOR**

1. ORGANIZED FRAUD/SCHEME TO DEFRAUD/ $50,000 OR MORE
   817.034(4)(a)1  FEL. 1D
2. GRAND THEFT FIRST DEGREE 812.014(2)(A)  FEL. 1D
3. STOPPING PAYMENT ON CHECK WITH INTENT TO DEFRAUD/VALUE $150 OR MORE
   832.041  FEL. 3D
4. STOPPING PAYMENT ON CHECK WITH INTENT TO DEFRAUD/VALUE $150 OR MORE
   832.041  FEL. 3D
5. STOPPING PAYMENT ON CHECK WITH INTENT TO DEFRAUD/VALUE $150 OR MORE
   832.041  FEL. 3D

FILED

JUN 1 0 2019

CLERK

### IN THE NAME AND BY THE AUTHORITY OF THE STATE OF FLORIDA:

   **KATHERINE FERNANDEZ RUNDLE,**  State Attorney of the Eleventh Judicial Circuit, prosecuting for the State of Florida, in the County of Miami-Dade, by and through her undersigned Assistant State Attorney, under oath, Information makes that:

CHIMERA,JAMES   :JC  06/07/2019
Circuit Court Direct File
 Jail No. 190139533 ,Bkd: 5/8/2019  , CIN: 1145427, W/M, DOB: 9/16/1959

F19008963

Schlesinger (F019)

(Defendant: )

## COUNT 1

RAZIEL OFER, on or between December 30, 2018 and January 12 2019, in the County and State aforesaid,   did unlawfully and feloniously engage in a schéme to defraud as defined by s. 817.034(3)(d), Fla. Stat., by engaging in a systematic, ongoing course of conduct with intent to defraud one or more persons and/or obtain property from one or more persons, to wit: Home Depot and/or Patrick Fairley , by false or fraudulent pretenses, representations, or promises or willful misrepresentations of a future act, and did thereby obtain property, to wit: tools and/or accessories and/or appliances and/or impact windows, of an aggregate value of fifty thousand dollars ($50,000.00) or more, the property of Home Depot and/or Patrick Fairley , as owner or custodian, in violation of s. 817.034(4)(a)1, Fla. Stat., contrary to the form of the Statute in such cases  made and provided, and against the peace and dignity  of the State of Florida.

(CC#: F19008963)

## COUNT 2

And the aforesaid Assistant State Attorney, under oath, further information makes RAZIEL OFER, on or between December 30, 2018 and January 12 2019, in the County and State aforesaid,   did knowingly, unlawfully and feloniously obtain or use or did endeavor to obtain or use store merchandise, the property of Home  Depot and/or Patrick Fairley as owner or custodian, valued at one hundred thousand dollars ($100,000.00) or more, with the intent to either temporarily or permanently deprive Home Depot and/or Patrick Fairley of a right to the property or of a benefit therefrom or to appropriate the property to said defendant's own use or to the use of any person not entitled thereto, in violation of s. 812.014(1) and (2)(a), Fla. Stat., contrary to the form of the Statute in such cases  made and provided, and against the peace and dignity  of the State of Florida.

(CC#: F19008963)

## COUNT 3

And the aforesaid Assistant State Attorney, under oath, further information makes RAZIEL OFER, on or about January 08, 2019, in the County and State aforesaid,   did unlawfully and feloniously, with intent to defraud any person, in person or by agent, make, draw, utter, deliver, or give a certain check, draft, or written order no. a check numbered 1074 (see attached copy) for the payment of money to Home Depot, and the defendant, for or on account of the said check, draft, or written order, did thereby secure from Home Depot certain goods or services, the value of which is $150.00 or more, and thereafter, pursuant to and in furtherance of the intent to defraud, said defendant did stop payment on said check, draft, or written order, in violation of s. 832.041, Fla. Stat., contrary to the form of the Statute in such cases  made and provided, and against the peace and dignity  of the State of Florida.

# Image for Log Number 180163600052

**STOP PAYMENT**



(CC#: F19008963)

**COUNT 4**

And the aforesaid Assistant State Attorney, under oath, further information makes RAZIEL OFER, on or about January 12, 2019, in the County and State aforesaid,   did unlawfully and feloniously, with intent to defraud any person, in person or by agent, make, draw, utter, deliver, or give a certain check, draft, or written order no. a check numbered 1080 (see attached copy) for the payment of money to Home Depot , and the defendant, for or on account of the said check, draft, or written order, did thereby secure from Home Depot certain goods or services, the value of which is $150.00 or more, and thereafter, pursuant to and in furtherance of the intent to defraud, said defendant did stop payment on said check, draft, or written order, in violation of s. 832.041, Fla. Stat., contrary to the form of the Statute in such cases  made and provided, and against the peace and dignity of the State of Florida.



## Image for Log Number 180233600045

STOP PAYMENT

(CC#: F19008963)

**COUNT 5**

And the aforesaid Assistant State Attorney, under oath, further information makes RAZIEL OFER, on or about January 12, 2019, in the County and State aforesaid,   did unlawfully and feloniously, with intent to defraud any person, in person or by agent, make, draw, utter, deliver, or give a certain check, draft, or written order no. a check numbered 1002 (see attached copy) for the payment of money to Home Depot , and the defendant, for or on account of the said check, draft, or written order, did thereby secure from Home Depot certain goods or services, the value of which is $150.00 or more, and thereafter, pursuant to and in furtherance of the intent to defraud, said defendant did stop payment on said check, draft, or written order, in violation of s. 832.041, Fla. Stat., contrary to the form of the Statute in such cases  made and provided, and against the peace and dignity  of the State of Florida.

# Image for Log Number 180363600001





FEB 0 5 2018

(CC#: F19008963)

**STATE OF FLORIDA, COUNTY OF MIAMI-DADE:**

Personally known to me and appeared before me, the Assistant State Attorney of the Eleventh Judicial Circuit of Florida whose signature appears below, being first duly sworn, says that the allegations set forth in this Information are based upon facts which have been sworn to as true by a material witness or witnesses, and which if true, would constitute the offenses therein charged, and that this prosecution is instituted in good faith.

Assistant State Attorney/Bar #: 0992658

1350 NW 12th Ave., Miami, FL  (305) 547-0100

Sworn to and subscribed before me this 10th day of June, 2019.

By _____

Deputy Clerk for Clerk of the Courts, or ~~Notary Public~~

# Exhibit 2



1100046986

# COMPLAINT/ARREST AFFIDAVIT

| OBTS NUMBER | ARMED FORCES | BWC | | POLICE CASE NO. |
|---|---|---|---|---|
| 1301374912 | NO | NO | | PD181018381240 |

| SPECIAL OPERATION: | [X] FELONY [ ] MISD [ ] TRAFFIC [ ] JUV [ ] DV [ ] MOVES [ ] In State / [ ] Out State [ ] CIV INF | JAIL NO. | PMHD | COURT CASE NO. |
|---|---|---|---|---|
| | [ ] WARRANT       FUGITIVE WARRANT: | 190139533 | NO | F19008963 |

| IDS NO. | AGENCY CODE | MUNICIPAL P.D. DEF. ID NO. | MDPD RECORDS AND ID NO. | STUDENT ID NO. | GANG RELATED | FRAUD RELATED |
|---|---|---|---|---|---|---|
| 2975094 | 030 | | 1145427 | | NO | NO |

| DEFENDANT'S NAME (LAST, FIRST, MIDDLE) | ALIAS and / or STREET NAME | SIGNAL: |
|---|---|---|
| OFER, RAZIEL | | |

| DOB (MM/DD/YYYY) | AGE | RACE | SEX | HISPANIC / ETHNICITY: | HEIGHT | WEIGHT | HAIR COLOR | HAIR LENGTH | HAIR STYLE | EYES | GLASSES | FACIAL HAIR | TEETH |
|---|---|---|---|---|---|---|---|---|---|---|---|---|---|
| 09/16/1959 | 59 | W | M | NO OTH | 5'10 | 270 | GRY | SHT | BLD | BRO | NO | CLN | NOR |

| SCARS, TATTOOS, UNIQUE PHYSICAL FEATURES (Location, Type, Description) | PLACE OF BIRTH (City, State/Country) |
|---|---|
| | IS |

| LOCAL ADDRESS | | |
|---|---|---|
| | PHONE | CITIZENSHIP IS |

| PERMANENT ADDRESS (Street, Apt. Number) | (City) | (State) | (Country) (Zip) | PHONE | OCCUPATION |
|---|---|---|---|---|---|
| 1568 DREXEL AVE # 5 | MIAMI BEACH | FL | US   33139 | (646) 431-7934 | BUSINESS MAN |

| SCHOOL OR BUSINESS ADDRESS (Street, Apt. Number) | (City) | (State) | (Country) (Zip) | PHONE | ADDRESS SOURCE VERBAL |
|---|---|---|---|---|---|

| DRIVER'S LICENSE NUMBER/STATE | SOCIAL SECURITY NO. | WEAPON SEIZED NO | Defendant/CONCEALED WEAPON PERMIT NONE | INDICATION OF: Alcohol Infuence: N  Drug Infuence: N |
|---|---|---|---|---|

| ARREST DATE | ARREST TIME | ARREST LOCATION | GRID |
|---|---|---|---|
| 05/08/2019 | 15:40 | 1568 DREXEL AVE #5 MIAMI BEACH, FL 33139 | 1181 |

| CO-DEFENDANT NAME | DOB | [ ] IN CUSTODY [ ] AT LARGE | [ ] FELONY [ ] DV | [ ] JUVENILE [ ] MISDEMEANOR |
|---|---|---|---|---|
| CO-DEFENDANT NAME | DOB | [ ] IN CUSTODY [ ] AT LARGE | [ ] FELONY [ ] DV | [ ] JUVENILE [ ] MISDEMEANOR |
| CO-DEFENDANT NAME | DOB | [ ] IN CUSTODY [ ] AT LARGE | [ ] FELONY [ ] DV | [ ] JUVENILE [ ] MISDEMEANOR |

| JUV only | Relation | Name | Street | Zip | Phone | Contacted? |
|---|---|---|---|---|---|---|

| CHARGES | CHARGE AS: | CNTS | FL STATUTE NUMBER | VIOL OF SECT. | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 1. F/3-ORGANIZED SCHEME TO DEFRAUD | F.S. | 1 | 817.034(4)(A)3 | | | 0014260A | N | |
| 2. F/1-GRAND THEFT 1ST DEGREE/100K> | F.S. | 1 | 812.014(2)(A) | | | 0006230G | N | |
| 3. | | | | | | | | |
| 4. | | | | | | | | |

The undersigned certifies and swears that he/she has just and reasonable grounds to believe, and does believe that the above named Defendant committed the following violation of law:

On the 30 day of DECEMBER, 2017, at 20:36 at (HOME DEPOT) 3030 SW 8TH ST. MIAMI, FL, 33135

THIS DETECTIVE WAS CONTACTED BY PATRICK FAIRLEY SENIOR ORGANIZED RETAIL CRIME INVESTIGATOR AND ADVISED OF AN INVESTIGATION HE WAS CONDUCTING ON THE DEFENDANT WHO WAS ENGAGED IN AN ORGANIZED SCHEME THAT DEFRAUDED HOME DEPOT OF $224,602.31. THE DEFENDANT ALSO DEFRAUDED TWO OTHER RETAILERS LOWES AND SEARS IN THE SAME MANNER. THE DEFENDANT WOULD PLACE A LARGE TICKET ORDER AT A HOME DEPOT AND THEN PROCEED TO PAY WITH HIS COMPANY CHECK. ONCE THE DEFENDANT RECEIVED THE MERCHANDISE HE WOULD PLACE A STOP PAYMENT ON THE CHECK, THEREFORE NEVER PAYING FOR THE MERCHANDISE HE TOOK. INVESTIGATOR FAIRLEY ATTEMPTED TO PROVIDE THE DEFENDANT STATUTORY NOTICES IN JUNE 2018 FOR EACH CHECK HE CANCELED AND THE... [Continued on Next Page]

| HOLD FOR OTHER AGENCY VERIFIED BY | [ ] HOLD FOR BOND HEARING. DO NOT BOND OUT (Officer Must Appear at Bond Hearing). | [ ] I understand that should I willfully fail to appear before the court as required by this notice so that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes. |
|---|---|---|
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS 08 DAY OF MAY, 2019 | [ ] You need not appear in court, but must comply with the instructions on the reverse side hereof. |
| GARCIA, M: Court ID: 030-04733 05020 | FUENTES, L: Court ID: 030-04489 05020 | |

COMPLAINT/ARREST AFFIDAVIT - COURT COPY





1100046986

| OBTS NUMBER | | **COMPLAINT/ARREST AFFIDAVIT** | | POLICE CASE NO. |
|---|---|---|---|---|
| 1301374912 | | **CONTINUATION** | | PD181018381240 |

COMPLAINT/ARREST AFFIDAVIT CONT.

| JAIL NO. | | COURT CASE NO. |
|---|---|---|
| 190139533 | | F19008963 |

| SPECIAL OPERATION: | [X] FELONY [ ] WARRANT | [ ] MISD | [ ] TRAFFIC | [ ] JUV | [ ] DV | FUGITIVE WARRANT: | [ ] MOVES In State | [ ] CIV INF Out Slate | JAIL NO. 190139533 | PMHD NO | COURT CASE NO. F19008963 |
|---|---|---|---|---|---|---|---|---|---|---|---|

| DEFENDANT'S NAME (LAST, FIRST, MIDDLE) | DOB (MM/DD/YYYY) |
|---|---|
| OFER, RAZIEL | 09/16/1959 |

| CO-DEFENDANT NAME | | DOB | [ ] IN CUSTODY [ ] AT LARGE | [ ] FELONY [ ] DV | [ ] JUVENILE [ ] MISDEMEANOR |
|---|---|---|---|---|---|
| | | | | | |

| CO-DEFENDANT NAME | | DOB | [ ] IN CUSTODY [ ] AT LARGE | [ ] FELONY [ ] DV | [ ] JUVENILE [ ] MISDEMEANOR |
|---|---|---|---|---|---|
| | | | | | |

| CHARGES | CHARGE AS: | CNTS | FL STATUTE NUMBER | VIOL OF SECT. | CODE OF | UCR | DV | WARRANT TYPE OR TRAFFIC CITATION |
|---|---|---|---|---|---|---|---|---|
| 5. | | | | | | | | |
| 6. | | | | | | | | |
| 7. | | | | | | | | |
| 8. | | | | | | | | |

DEFENDANT REFUSED TO ACCEPT NOTICE.

ON DECEMBER 30, 2017, THE DEFENDANT ENTERED THE HOME DEPOT STORE #277 LOCATED AT 3030 SW 8TH STREET AND PROCEEDED TO ORDER AND PURCHASE MULTIPLE IMPACT WINDOWS VALUED AT $35,729.71. THE DEFENDANT PROCEEDED TO PAY WITH HIS COMPANY CHECK #1074 ACCOUNT ENDING IN 3044. THE CHECK WAS SUBMITTED FOR PAYMENT AND ALL THE MERCHANDISE WAS OBTAINED. THE DEFENDANT THEN PROCEEDED TO CONTACT HIS BANK AND PLACE A STOP PAYMENT ON CHECK# 1074.

ON JANUARY 9, 2018, THE DEFENDANT ENTERED THE HOME DEPOT STORE #277 LOCATED AT 3030 SW 8TH STREET AND PROCEEDED TO ORDER AND PURCHASE MULTIPLE ITEMS TO INCLUDE TOOLS, ACCESSORIES, AND APPLIANCES VALUED AT $146,822.47. THE DEFENDANT PROCEEDED TO PAY WITH HIS COMPANY CHECK #1080 ACCOUNT ENDING IN 3044. THE CHECK WAS SUBMITTED FOR PAYMENT AND ALL THE MERCHANDISE WAS OBTAINED. THE DEFENDANT THEN PROCEEDED TO CONTACT HIS BANK AND PLACE A STOP PAYMENT ON CHECK# 1080.

ON JANUARY 10, 2018, THE DEFENDANT ENTERED THE HOME DEPOT STORE #277 LOCATED AT 3030 SW 8TH STREET AND PROCEEDED TO ORDER AND PURCHASE MULTIPLE ITEMS TO INCLUDE TOLLS, ACCESSORIES, AND APPLIANCES VALUED AT $42,050.13. THE DEFENDANT PROCEEDED TO PAY WITH HIS COMPANY CHECK #1002 ACCOUNT ENDING IN 3044. THE CHECK WAS SUBMITTED FOR PAYMENT AND ALL THE MERCHANDISE WAS OBTAINED. THE DEFENDANT THEN PROCEEDED TO CONTACT HIS BANK AND PLACE A STOP PAYMENT ON CHECK# 1002.
ON TODAYS DATE THE DEFENDANT WAS LOCATED AT HIS RESIDENCE AND TAKEN INTO CUSTODY. POST WRITTEN MIRANDA RIGHTS PER FORM THE DEFENDANT DID ADMIT TO MAKING THE PURCHASES WITH HIS COMPANY CHECKS AND PLACING THE STOP PAYMENTS ON THE CHECKS. THE DEFENDANT DID ADMIT TO TAKING POSSESSION OF THE PURCHASED ITEMS BUT STATED THAT SOME OF THE MERCHANDISE WAS DEFECTED OR NOT INSTALLED CORRECTLY THEREFORE CAUSING HIM LOSSES. THE DEFENDANT STATED THAT HE WAS IN CONTACT WITH HOME DEPOT VIA PHONE TEXTS AND EMAILS BECAUSE HE BELIEVED IT WAS MORE OF A CIVIL DISPUTE EVEN THOUGH HE DEPRIVED HOME DEPOT OF THEIR MONIES AND OR PRODUCTS WHICH HE CONSUMED, USED OR HAS STORED IN HIS BUILDINGS UNUSED. THE DEFENDANT WAS ARRESTED AND TRANSPORTED TO TGK.

NOTE: THERE ARE OTHER OPEN CASES WITH RETAILERS WHICH HE HAS CONDUCTED THE SAME COURSE OF CONDUCT TO DEPRIVE THOSE VICTIMS OF THEIR MERCHANDISE AND OR MONIES.

| HOLD FOR OTHER AGENCY VERIFIED BY | [ ] HOLD FOR BOND HEARING. DO NOT BOND OUT (Officer Must Appear at Bond Hearing). | [ ] I understand that should I willfully fail to appear before the court as required by this notice to appear that I may be held in contempt of court and a warrant for my arrest shall be issued. Furthermore, I agree that notice concerning the time, date and place of all court hearings should be sent to the above address. I agree that it is my responsibility to notify Clerk of the Court (Juveniles notify Juvenile Division) anytime that my address changes. |
|---|---|---|
| I SWEAR THAT THE ABOVE STATEMENT IS TRUE AND CORRECT. | | [ ] You need not appear in court, but must comply with the instructions on the reverse side hereof. |
| GARCIA, M: Court ID: 030-04733 | SWORN TO AND SUBSCRIBED BEFORE ME, THE UNDERSIGNED AUTHORITY THIS 08 DAY OF MAY, 2019 | |
| | FUENTES, L: Court ID: 030-04489 | |

20191797110                                    Report Generated at 05/09/2019 06:46:36

**IN THE CIRCUIT COURT OF THE ELEVENTH JUDICIAL CIRCUIT OF FLORIDA
IN AND FOR MIAMI-DADE COUNTY CRIMINAL DIVISION**

STATE OF FLORIDA,
      **Plaintiff,**

vs.



**CASE NUMBER** F19008963

    **JUDGE** Schlesinger  (F019)

**DISCOVERY EXHIBIT;
STATE'S DEMAND FOR DEFENSE
DISCOVERY AND DEMAND FOR ALIBI**

    **Police Case #:** PD181018381240

**Depo Type:**

RAZIEL  OFER

_____**Defendant(s)**_____

The State of Florida, pursuant to Rule 3.220 and 3.200 Florida Rules of Criminal Procedure, files its Discovery Exhibit, State's Demand for Defense Discovery and Demand for Alibi Defense, as follows:

1.  The names and addresses of all persons known to the State Attorney to have information which may be relevant to any offense charged, and to any defense thereto, or to any similar fact evidence to be present at trial under section 90.404(2) Florida Statutes are as follows:

(AS)  **001.**  GARCIA, MIGUEL
      Dept. 030-  ID. 04733

(AS)  **003.**  DOMINGUEZ, ALEJANDRO
      Dept. 030-  ID. 05928

( A )  **004.**  FAIRLEY, PATRICK
      1250 LINTON BLVD
      DELRAY BEACH  FL 33444-1115
      C/O: HOME DEPOT

( B )  **005.**  CAUDILLO, DANIEL
      1200 SOUTH PINE ISLAND R
      PLANTATION  FL 33324-4413
      C/O: BANK OF AMERICA

(A) = Essential Witness - Can be depose
(B) = Subject to Depo/leave of court/goodCause
(C) = CANNOT be deposed
(E) = Expert/Essential Witness - Can be deposed

(F) = Expert/Subject to Depo/leave of court/good cause
(S) = Witness to statement by (co)defendant
(T) = Expert/Witness to statement by (co)defendant
(AS) = Category A Witnesses who were present
when a statement was made by the defendant

(JC)    (CC#: F19008963)

Continue on Next Page...

2.  All statements of witnesses listed in paragraph 1 which are presently in the possession of the State are attached.

3.  All statements or summaries of statements made by the defendant which have been reduced to writing presently in the possession of the State are attached.

4.  There are no codefendants, or the trial is not a joint trial.

5.  There are no recorded Grand Jury Minutes.

6.  There are no tangible papers or objects obtained from or belonging to the accused.

7.  There is no material or information which has been provided by a confidential informant.

8.  There was electronic surveillance of the defendant and there are no documents available.

9.  There was a search and seizure but there are no documents relating thereto known to the State at this time.

10.  There are no reports or statements of experts made in connection with this case, known to the State at this time.

11.  All physical evidence known to the State at this time, not obtained from or belonging to the accused, is available for inspection and copying, by contacting the undersigned Assistant State Attorney.

13. There are no tangible papers, objects or substances in the possession of law enforcement that could be tested for DNA.

14. There are no informant witnesses who will testify concerning the statements of the defendant.

(A) = Essential Witness - Can be depose
(B) = Subject to Depo/leave of court/goodCause
(C) = CANNOT be deposed
(E)  = Expert/Essential Witness - Can be deposed

(F) = Expert/Subject to Depo/leave of court/good cause
(S) = Witness to statement by (co)defendant
(T)  = Expert/Witness to statement by (co)defendant
(AS) = Category A Witnesses who were present
when a statement was made by the defendant

(JC)      (CC#: F19008963)

Continue on Next Page...