*Tagged Opinion*



**ORDERED in the Southern District of Florida on June 16, 2022.**

**Laurel M. Isicoff
Chief United States Bankruptcy Judge**

_____

UNITED STATES BANKRUPTCY COURT
SOUTHERN DISTRICT OF FLORIDA

IN RE:                                                   CASE NO. 22-14038-BKC-LMI

942 Penn RR, LLC,                         Chapter 11

           Debtor.
_____/

**MEMORANDUM OPINION ON ORDER GRANTING MOTION TO APPOINT
CHAPTER 11 TRUSTEE**

This matter came before the Court for hearing on June 8, 2022 at 9:30 a.m. (the "Hearing") upon the *Motion for Appointment of Chapter 11 Trustee and Objection to Debtor's Motion for Voluntary Dismissal of Chapter 11 Case* (ECF #38) (the "Trustee Motion") filed by secured creditor 1250916 Ontario Limited ("Ontario") and joined by creditors G. Proulx, LLC[1], Immokalee Real Estate Holdings, LLC ("Immokalee")[2], and Marjam Supply of Florida, LLC[3]. The Court

---

[1] *Notice of Joinder of Motion and Objection* (ECF #49).
[2] *Notice of Joinder of Motion and Objection* (ECF #54).
[3] *Marjam Supply of Florida, LLC's Joinder in 1250916 Ontario Limited's Motion for Appointment of Chapter 11 Trustee and Objection to Debtor's Motion for Voluntary Dismissal of Chapter 11 Case* (ECF #52).

has considered argument of counsel, reviewed the pleadings, the entire court file, including the Verified Response[4] and Supplement to the Response[5] filed by the Debtor and joined by the owners of the Debtor, Raz Ofer ("Ofer") and Robert Mendez[6] ("Mendez"). The Court has also reviewed the Notice of Filing (ECF #53) of the public records cited in the Trustee Motion filed by Ontario. This Court entered an *Order Granting Motion to Appoint Chapter 11 Trustee* (ECF #63) (the "Trustee Order") on June 14, 2022. This Memorandum Opinion outlines the basis for the Court's appointment of a chapter 11 trustee under 11 U.S.C. §1104(a)(2) and 11 U.S.C. §1112(b)(1) without the need for an evidentiary hearing.

## FACTS AND PROCEDURAL HISTORY

942 Penn RR, LLC (the "Debtor") filed this case on May 23, 2022 (ECF #1) (the "Petition Date"). The Debtor owns real property located at 942 Pennsylvania Avenue, Miami Beach, Florida 33139 (the "Property"). The Debtor owns and manages the Property through short term rentals of the units on the Property. The Debtor's equity interests are held by Ofer and Mendez, who are also the co-managers of the Debtor. In its schedules, the Debtor lists Creative Directions, Inc. ("CD") and Mortgage Holdings 2018, LLC ("MH2018" and together with "CD" the "Related Entities") as secured creditors. The Related Entities are also owned and controlled by Ofer and Mendez.

---

[4] *Debtor's Verified Response to Motion for Appointment of Chapter 11 Trustee [Ecf No. 38]* (ECF #40).
[5] *Debtor's Supplemental Sworn Declaration of Raziel Ofer in Further Support of its Verified Response to Motion for Appointment of Chapter 11 Trustee [ECF No. 38]* (ECF #55).
[6] *Raz Ofer and Robert Mendez's Response and Joinder in Debtor's Opposition To 1250916 Ontario Limited's (1) Motion for Appointment of Chapter 11 Trustee, and (2) Objection to Debtor's Motion for Voluntary Dismissal* (ECF #56).

On June 2, 2022, the Debtor filed its *Motion for Voluntary Dismissal of Chapter 11 Case* (ECF #33) (the "Motion to Dismiss") seeking dismissal of the case under section 1112(b)(1) on the basis that "cause" exists under 11 U.S.C. §1112(4)(A). The stated cause was the Debtor's belief that "the Court will not approve the payment of post-petition wages to the Debtor's insiders and salaries to its members, forcing the Debtor to have to hire non-insiders as employees, which will be severely disruptive to its business operations. . . . [Therefore] creat[ing] a situation where there is an absence of reasonable likelihood of rehabilitation under the circumstances." The Trustee Motion was filed in response to the Motion to Dismiss, objecting to the voluntary dismissal of the case and seeking the appointment of a chapter 11 trustee instead. The Trustee Motion seeks appointment of a chapter 11 trustee under either 11 U.S.C. §1104(a)(1) or 11 U.S.C. §1104(a)(2) pursuant to 11 U.S.C. §1112(b)(1).

## GROUNDS FOR APPOINTMENT OF TRUSTEE

Section 1112(b)(1) of the Bankruptcy Code provides:

> [O]n request of a party in interest, and after notice and a hearing, the court shall convert a case under this chapter to a case under chapter 7 or dismiss a case under this chapter, whichever is in the best interests of creditors and the estate, for cause **unless the court determines that the appointment under section 1104(a) of a trustee or an examiner is in the best interests of creditors and the estate**.

11 U.S.C. §1112(b)(1) (emphasis added).

As this Court set forth in its *Sundale* opinion:

> The Bankruptcy Code sets forth two avenues for appointment of a chapter 11 trustee—one mandatory and one discretionary. . . .
>
> Under section 1104(a)(1) the court is required to appoint a trustee upon finding cause, including fraud, dishonesty, incompetence or

gross mismanagement by the debtor. *In re SunCruz,* 298 B.R. at 828. The use of the word "shall" leaves no discretion in appointment once cause is found. . . .

When determining the appropriateness of a trustee under section 1104(a)(2), that is, whether the appointment of a trustee "is in the interest of creditors, any equity security holders, and other interests of the estate" the court's exercise of its discretion is much broader and takes into consideration a variety of different factors.

"§ 1104(a)(2) may well entail [ ] the exercise of a spectrum of discretionary powers and equitable considerations, including a cost-benefit analysis, to determine whether the appointment of a reorganization trustee would be in the interests of creditors, equity security holders and other interests of the Estate." *In re SunCruz Casinos, LLC,* 298 B.R. at 829 (quoting *In re V. Savino Oil & Heating Co.,* 99 B.R. 518, 525 (Bankr. E.D. N.Y. 1989)). *See In re Eichorn,* 5 B.R. 755, 758 (Bankr. D. Mass. 1980).

"Unlike § 1104(a)(1), § 1104(a)(2) does not require a finding of fault; the court may appoint a trustee even if no 'cause' exists." *In re Euro–Am. Lodging Corp.,* 365 B.R. 421, 428 (Bankr. S.D. N.Y. 2007). Instead, section 1104(a)(2) reflects the practical reality that a trustee is needed. *Id. See also, In re Sharon Steel Corp.,* 871 F.2d at 1226; *In re V. Savino Oil & Heating Co.,* 99 B.R. at 527 n. 11.

Factors that courts have used to determine whether a trustee should be appointed under this subsection include:

> (1) the trustworthiness of the debtor;
> (2) the debtor in possession's past and present performance and prospects for the debtor's rehabilitation;
> (3) the confidence—or lack thereof—of the business community and of creditors in present management; and
> (4) the benefits derived by the appointment of a trustee, balanced against the cost of the appointment

*In re Euro–Am. Lodging Corp.,* 365 B.R. at 427 (quoting *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 168 (Bankr. S.D. N.Y. 1990)).

*In re Sundale, Ltd.*, 400 B.R. 890, 899–901 (Bankr. S.D. Fla. 2009).

While there is a slight difference in language between section 1112(b)(1) and section 1104(a), the factors for appointing a trustee under both are the same. *See In re Corona Care Convalescent Corp.*, 527 B.R. 379, 384 (Bankr.

C.D. Cal. 2015) ("§ 1112(b)[(1)] refers to whether appointment of a trustee under § 1104(a) 'is in the best interests of creditors and the estate' whereas § 1104(a) has more expansive language referring to additional parties, that is, whether the appointment of a trustee 'is in the interests of creditors, any equity security holders, and other interests of the estate, without regard to the number of holders of securities of the debtor or the amount of assets or liabilities of the debtor.'").

In this instance, the Trustee Motion, as well as an alternative remedy under the Debtor's Motion to Dismiss, invokes the provisions of section 1112(b)(1).  Thus, in considering the factors of section 1104(a)(2) and section 1112(b)(1), the Court considers the narrower language of section 1112(b)(1), and what is in the best interests of creditors and the estate.

In considering a motion for the appointment of a trustee, a full evidentiary hearing is not always required. *See In re Basil St. Partners, LLC,* 477 B.R. 856, 867 (Bankr. M.D. Fla. 2012); *In re Ionosphere Clubs, Inc.,* 113 B.R. 164, 167–68 (Bankr. S.D.N.Y. 1990).  At the Hearing, the Court advised the parties that it would consider the uncontroverted facts and documents and determine whether the Court would need to consider facts that could only be developed through an evidentiary hearing, or could rule without one.  Having reviewed the record as described above, the Court has determined no evidentiary hearing is necessary.[7]

---

[7] As the Court noted in the Trustee Order, the Court had directed Debtor to file two documents by June 13, 2022 – a detailed motion for use of cash collateral and a certification indicating that all of the cash collateral that was used without Court authority has been returned and is in Debtor's counsel's trust account – or a trustee would be appointed.  The Debtor failed to file either document until after 7:30 p.m. on June 14, well after the deadline and after the Trustee

The Court finds that it is in the best interests of the estate and of the creditors that a chapter 11 trustee be appointed. First, in this case, all creditors other than the Related Entities and a disgruntled former tenant support appointment of a trustee.

Second, the equity holders have an incurable conflict of interest. The equity holders - Ofer and Mendez - are focused on their own interests. This is evidenced by actions that they have taken prepetition and postpetition, which underscore both unresolvable conflicts of interest, as well as concerns regarding the accuracy of representations made to this Court. Prepetition, according to sworn testimony of Ofer in the Immokalee Action[8] before the Circuit Court, the Debtor entered into a five-year lease with MH2018 for $2 million, such that MH2018 owns all the rents generated by the Property. The Debtor also entered into a construction contract with MH2018, for which, according to Ofer, MH2018 received a payment of $2 million. Also prepetition, on April 14, 2022, MH2018 sought to intervene in the Immokalee Action to enforce a consent final judgment of foreclosure against the Debtor and in favor of MH2018 where Debtor agreed to foreclosure of its interest in the Property (the "Consent Judgment of Foreclosure"). The Debtor scheduled MH2018 as having a secured claim in the amount of $8,675,000. The schedules were submitted on May 23, 2022 with the Petition. On April 14, 2022, a mere five

---

Order had been entered. The Debtor filed an *Emergency Motion to Vacate Order Granting Motion to Appoint Chapter 11 Trustee [ECF No. 63]* (ECF #68) on the grounds of excusable neglect (a mistaken belief in the deadline).

[8] *942 Penn RR LLC v. Immokalee Real Estate Holdings, LLC*, Case No. 17-26820 CA 21(the "Immokalee Action"), pending in the Circuit Court of the Eleventh Judicial Circuit in and for Miami-Dade County, Florida (the "Circuit Court").

weeks before, the Debtor acknowledged in the Consent Judgment of Foreclosure that the total debt owed to MH2018 is $11,798,000.

While it is unclear what position CD took prepetition, CD is scheduled as having a secured claim in the amount of $8,675,000. Postpetition, at a preliminary hearing on a motion to use cash collateral, Ofer stated that CD holds a first lien on the Property.

Other creditors dispute whether any interest asserted on behalf of the Related Entities is legitimate, and it is understandable that the Debtor would not be expected to question the legitimacy of those claims in light of the common ownership between the Debtor and the Related Entities. However, as a fiduciary of the estate, the Debtor and its principals have an obligation to do so, since it has an impact on who and how much makes up the creditor body.

Debtor's counsel argued at the Hearing that it doesn't matter whether the Related Claims are contested because the value of the Property exceeds $12,000,000, and therefore there is sufficient equity to pay all legitimate secured claims notwithstanding the claims of the Related Entities. Of course, this argument ignores that the scheduled amount of secured claims totals $17,350,000[9] which clearly exceeds the $12,000,000 value, and, of course, also ignores the Property value of $1,617,630, listed in the Debtor's bankruptcy schedules (multiple times) under penalty of perjury.[10]

---

[9] The Debtor's schedules list the total allowed secured claims against the Property as $8,675,000; however, the schedules list the secured claims of *each* of the Related Entities as $8,675,000, meaning the total amount of secured claims is actually $17,350,000.
[10] The Debtor now claims this is the assessed value of the Miami-Dade County Tax Collector, but that is not stated anywhere in the schedules.

- 7 -

When those in charge of a debtor in possession have a conflict of interest with the estate and creditors, regardless of whether those conflicts create acrimony between the insiders and other parties in interest, it is appropriate to appoint a trustee because those conflicts prevent the insiders from acting consistent with their fiduciary duties. In *In re Marvel Ent. Grp., Inc.,* 140 F.3d 463, 472–73 (3d Cir. 1998) the court wrote:

> We expressly hold that there is no per se rule by which mere conflicts or acrimony between debtor and creditor mandate the appointment of a trustee. In this case, rather, we are faced with circumstances in which the Icahn interests, themselves creditors of the Perelman holding companies, are currently in control of the debtor at the same time that the debtor proposes reorganization plans. In this position, although the Icahn interests are technically and officially fiduciaries to all creditors, they would also be placed in an awkward position of evaluating their own indenture and debt claims. Having found that this unhealthy conflict of interest was manifest in the "deep-seeded conflict and animosity" between the Icahn-controlled debtor and the Lenders and in the lack of confidence all creditors had in the Icahn interests' ability to act as fiduciaries, the district court did not depart from the proper exercise of discretion when it determined sufficient cause existed under § 1104(a)(1) to appoint a neutral trustee to facilitate reorganization.

*see also In re SunCruz Casinos, LLC,* 298 B.R. 821, 830 (Bankr. S.D. Fla. 2003) (finding conflict of interest where debtor in possession and creditor held landlord-tenant relationship and where debtor in possession also had claims against, and equity interests in, the Debtor's estate). It is not necessarily inappropriate for the Debtor's equity holders to protect all of their interests, however, it disqualifies them from serving as a fiduciary of this estate and its creditors.

In addition to the conflicts the Court has already described, there are further concerns raised by the Debtor's bankruptcy schedules and the

postpetition conduct of the Debtor and its principals. The Court has already noted the discrepancy in the bankruptcy schedules regarding the amount of the MH2018 claim and the value of the Property.

The Statement of Financial Affairs ("SOFA") was not filed with the schedules, as required, and they have still not been filed. There is critical information that must be disclosed in the SOFA including transfers within the two years prior to bankruptcy and transfers to insiders.[11]

The schedules also did not list the lease with MH2018 as an executory contract notwithstanding that Ofer testified under oath in the Immokalee Action that the lease existed. Indeed, the Debtor's bankruptcy plan filed on June 13 (ECF #59) did not even mention MH2018 or its secured claim of either $11,798,000 or $8,675,000, or address the alleged lease of the Property.

There are additional concerns raised by the Debtor's postpetition conduct. The Debtor used the cash collateral without authority, and then claimed that the Debtor's principals did not know they couldn't use the cash collateral without court authority. The use and restrictions on use of cash collateral are basic bankruptcy concepts. Either the Debtor's bankruptcy attorney did not properly instruct the Debtor prepetition, which the Court finds highly unlikely, since Debtor's counsel is an experienced bankruptcy practitioner, or the Debtor and its principals didn't care about the restrictions. Either way, it is telling that, when told that the Court doesn't usually approve

---

[11] The *Second Ex-Parte Motion to Extend Time to Comply with Clerk's Notice of Deadline(s) to Correct Filing Deficiency(ies)* (ECF #61) was filed citing immediate delays including a long-planned weekend commitment. However, it is not clear why those should have been a problem when Debtor's counsel asked for only a one-week extension, knowing that the weekend commitment was already on the calendar. And had the SOFA been ready to file on Monday, the unanticipated dental issue would not have impacted the timely filing. Indeed, the Court notes that the Debtor managed to file a plan on June 13.

payments to insiders if not earned, the tardily filed motion to use cash collateral (ECF #27)[12] was withdrawn and the Debtor sought to dismiss the bankruptcy case instead.

The Debtor filed a bankruptcy plan without filing an accompanying disclosure statement. In addition to omitting MH2018, the plan is structured such that only CD would have a vote. Because there is no disclosure statement it is not clear whether the Debtor understands that all the funds to pay disputed claims would have to be accounted for in some way; perhaps that is the purpose of the guarantee by Ofer that the plan describes.  It is impossible to know without a disclosure statement.

When asked about the conflict of interest problem at the Hearing, the Debtor did not even attempt to address the problem other than to say that Ofer's guarantee of all the debt should take care of any conflicts, and of course, the protection of the high value of the Property (which does not appear, objectively, to exist).

As to the prepetition conduct of the Debtor, including the Consent Judgment of Foreclosure to MH2018, Debtor's counsel argued that prepetition conduct is not relevant, and that an evidentiary hearing is necessary so the Debtor and its principals can show that they will comply with their fiduciary duties postpetition. However, prepetition conduct is always relevant in considering whether a trustee should be appointed. Moreover, Debtor's postpetition conduct to date underscores the creditors' concerns that this

---

[12] The Court notes that the original cash collateral motion did not identify, and was not served upon, Immokalee, even though the Debtor and Immokalee had litigated the issue of rents extensively prepetition and even though Immokalee was identified on the schedules as a disputed secured creditor.

Debtor cannot perform its fiduciary duties. There is nothing that Ofer or Mendez could testify about at this point that would convince this Court that they will meet their obligations as fiduciaries under the Bankruptcy Code.

## CONCLUSION

For all of the reasons set forth in this Memorandum Opinion, the Court finds that appointment of a trustee is in the best interests of the creditors and of this estate. These reasons are independent of the untimely filing of the new cash collateral motion (ECF #67) and the repayment certification (ECF #70). In other words, even had the Debtor timely filed those pleadings, the result would have been the same. Even without any additional facts that might be proven at an evidentiary hearing, the Court finds that appointment of a trustee, rather than leaving the Debtor as a debtor in possession, dismissal or conversion, is the appropriate remedy.

The Debtor and its principals are still free to pursue a plan of reorganization, since, with appointment of the chapter 11 trustee, exclusivity is terminated. However, if the Debtor intends to pursue its plan as filed, or any other plan, the Debtor must comply with all provisions of the Bankruptcy Code.

# # #

Copies furnished to:
All counsel of record.

*Attorney Eric Silver is directed to serve a copy of this Order on interested parties who do not receive service by CM/ECF, and file a proof of such service within two (2) business days from entry of the Order.*