**SOUTHERN DISTRICT OF FLORIDA**
**www.flsb.uscourts.gov**

In re:

942 PENN RR, LLC,

Debtor. I

FILED [stamp] ...
'22 NOV 23 ...

Case No. 22-14038-LMI
Chapter 11

_____/

## MOTION TO REMOVE BARRY MUKAMAL
## AS CHAPTER 11 TRUSTEE

ACTING PRO SE

RAZ OFER      and pursuant to 11 U.S.C. § 324, files this

Motion to Remove Barry E Mukamal as Chapter 11 Trustee, and in support states:

### APPLICABLE LAW

Section 324(a) of the Bankruptcy Code provides that a trustee may be removed for cause.

Cause is not defined in § 324. However, there is little question that a willful breach of a

trustee's fiduciary duty constitutes cause. *See, e.g., in re Vega,* 102 B.R. 552 (Barna. N.D.

Tex. 1989).

### PROCEDURAL BACKGROUND

This chapter 11 bankruptcy case was filed on May 23, 2022. Mukamal was appointed

Chapter 11 trustee on June 27, 2022.

## ARGUMENT

As outlined in the Declaration of Raz Ofer attached hereto as Exhibit A, Makamal

has breached his fiduciary duties as follows:

1. The Trustee is pursuing a fraudulent and criminal POC by Ontario despite

the fact that he knows such a claim is fraudulent and criminal in Bankruptcy

Court.

See Exhibit A, Mark Roher, new claim objection to Ontario's POC.

2. Ontario's POC - In brief, Ontario in State Court didn't disclose that they sued

Kagan, their Lawyer and escrow agent, for the stolen $400K. They even claimed

that Kagan wasn't their Lawyer and Escrow agent. When we found out about their

lawsuit in Federal Court in CA and that they admitted for Kagan being their

Lawyer and escrow agent, the Judge in State Court flipped at them for withholding

this information.

3. It then became clear that Ontario had also obtained a Judgment against

Kagan for the $400K he had stolen.

4. A thorough review, before the JSC, of the CA lawsuit and default Judgment

revealed outrageous information, not only Ontario claimed $1.2M from Kagan,

they obtained a Judgment for the entire alleged loan amount of $1.2M.

5. A review of the complaint and Judgment shows that Ontario's claimed in this CA Federal Lawsuit that Kagan stole the entire $1.2M, not just the $400K.

6. What is even more alarming that Ontario in their fraudulent POC claim that Kagan did not steal the money, he in fact gave it to 942 Penn RR.....So, here is Ontario now in Bankruptcy Court saying we lied in CA Federal Court, Kagan is a nice person, he did not steal the money, he gave it to 942 Penn RR....Of Course, Ontario's Lawyer, Eric Silver, now comes to this Court saying we know we lied in CA Federal Lawsuit, now it is my turn to lie to Judge Isicoff...

7. In other words, Ontario admits that what they said in CA was a lie (that Kagan stole the $1.2M) and now in Bankruptcy they say the opposite, see above. fraudulent claims in BK Court are criminal)

8. The terrifying thing is that despite the fact that the trustee is aware that Ontario's POC is fraudulent and as such is criminal (fraudulent claims are criminal in Bankruptcy Court). The Trustee is advancing a criminal POC in order to help Eric Silver,who recommended Mr Mukamal.

9. All the BK Lawyers I discussed it with, in addition to Mark Roher (Mark), agree that this claim is fraudulent, the CA lawsuit, the Judgment in CA and the POC here all contradicting themselves.

10. The trustee has settled with Ontario without 942 Penn consent and without regard to the fact that this a clear blackmail using a fraudulent and criminal POC.

11. Mark will be filing a motion for equitable subordination of Ontario's POC.

11. The trustee has breached the Booking.com Court order by using my personal Booking.com account.

was only a threat....

13. The trustee has breached an agreement regarding units I've a valid lease in the building, for which I paid in advance

14. The trustee has tampered with personal information in my Booking.com account and in my Email account.

15. The trustee has subpoenaed CC statements from a childhood friend of mine although I gave all CC Statements to him.

16. The trustee continues to harass me, he subpoenaed a broker who had a listing agreement for this building from 2 years ago, he told the Broker's Lawyer that he wants all communications with me and the listing agreement. What is incredible is that the trustee told the Broker's Lawyer that he's targeting me, not the broker....The building can't be sold without Court's approval, these are further attempts to harrass me.

17. The trustee is saying to other people that this is an excellent case for him, the property is worth a lot of money and the claims are minimal, so he is doing very well in this case....

As a curiosity, I know I can't discuss the JSC, I asked Judge Hyman for his experience how much he thinks the trustee can charge in this case, Judge Hyman said $300K-$400K, this was me asking Judge Hyman, no other party was present and it was not part of the discussions at the JSC. Obviously, the trustee is now asking for a lot more, although your honor told him at the beginning not to inflate his fees. He's for no reason emailing everybody nonstop, this is an attempt to inflate his fees and steal money, to put it mildly.

18. The trustee's involvement with criminal POC is super corrupt, the only way to

19. The trustee is subpoenaing confidential personal agreements of mine knowing they can only be obtained by Court order. This isn't just illegal actions by the trustee but a clear attempts to inflate his fees, these actions are outrageous.

See below my email to Eric Silver regarding Ontario's POC:

## Ontario's Claim942 Penn - JSC - 25th Oct - 10AM - ZOOM



Nov 11, 2022, 2:56 AM (4 days ago)

**Raz Ofer
<raz.ofer2@gmail.com
>**

to esilver, Scott,
Barry, Esq., David,

me

ric,

nis email isn't personal. Contrary to what I thought, I'm convinced, after I heard you at the JSC, that
ou're a nice guy, in addition to being an excellent lawyer. I strongly disagree with your arguments but you
ɔ your job.

. The issue of whether Ontario collected on the CA Judgment from Kagan is irrelevant. Ontario said in

A that Kagan stole the money from Ontario in Bankruptcy Court they said in their POC that Kagan didn't eal the money but gave it 942 Penn.

was only last week that I realized, for the first time, that Ontario obtained a Judgment in federal Court in A for $1.2M, not just for the $400K. This fact was withheld from the State Court, I'm sure that if the State ourt will know about it, than Salpeter will be referred to the Bar by the State Court Judge.

It is clear that Ontario lied in CA and now they're lying to Judge Isicoff.

This makes their POC fraudulent and criminal, no other way.

Other than Mark, I'm consulting another BK Lawyer from a big Miami firm, I didn't tell Mark or David ɔout it. They reviewed the POC, the CA lawsuit and Judgment, our objections and filings to the JSC. ʼey say that this claim is clearly fraudulent and has criminal implications.

necessary, they'll testify in Court. They're reluctant to enter appearance for reasons I can't say. As a result, I plan to file a motion tomorrow to remove the trustee for pursuing a criminal POC. The ʋstee settlement with Ontario for $1.8M is nothing but crazy and corrupt. I knew the trustee would do it ʼd suggested to Mark not to attend the JSC, but he persuaded me to attend.

We'll file a new expedited motion to strike Ontario's claim, or file for a summary Judgment against ɪntario.

. At the JSC, you provided no evidence that I gave any instructions to Kagan not to pay Immokalee MM) in 2017. Regardless, I've no authority to give any instructions to Ontario's Lawyer and escrow ɟent. If this was the case, for instance, I would have told him to give 942 Penn the money and not to ɪcord the mortgage.....

ɪntario is responsible for his actions, hence they sued him in Federal lawsuit in CA. Kagan is the roblem, not me. I paid every penny until it was 150% clear that Kagan stole the money.

**ɪagan is the only problem in this case, not me.**

. The trustee is saying that he gave 942 Penn 300K, there's no evidence whatsoever in the Bank tatements of 942 Penn RR. The trustee is saying that he gave money to me personally. This is not the ustee's f will.as the loan note says the money must be transferred to 942 Penn RR Bank account.

ne trustee deliberately ignores that I paid interest on $1,200,000.00 although $400K was invested in owing weed in LA.... This corrupt trustee doesn't care, but I'm sure Judge Isicoff will.

lore important, even if Evan gave any money in 2020, this doesn't explain why he didn't pay IMM in 2017 ter 942 Penn closed on the loan. The trustee knows his arguments are nonsense as IMM should have een paid by Ontario in 2017 2020. In addition, I paid legal fees to fight IMM and Ontario for all this eriod. I don't believe Judge Isicoff will have much patience to listen to the trustee's arguments, I'm sure ne'll want to understand why it wasn't paid in 2017 and why this claim wasn't dismissed as criminal.

The fact that I filed a lawsuit against IMM doesn't release Ontario from it's obligation to pay IMM in )17. I sometimes file a lawsuits as it helps settle cases faster.
Had Ontario paid IMM in 2017, 942 Penn would not have had to pay IMM now $1,150,00. Ontario must nd will pay it.

You recommended Mukamal as a trustee and he gets more work from your recommendations than om Mark, the trustee is clearly working hard to help you. This trustee is corrupt and there'll be a price for s actions.

). Mukamal said at the JSC, Judge Hyman told me, that I won't be able to pay the claims and he'll have · sell the property. This isn't the first time that Mukamal is lying.

sold in the last 3 years buildings in excess of $25M in Miami, none of these buildings had a mortgage, I wned them outright. I'm reluctant to bring money to Miami due to fraud, but can do it if I need to.

1. The trustee is communicating with Rodriguez/Kalb in connection to this case.

I file tomorrow a RFP on the trustee and Scott to reveal all communications with yourself and

2. I'll give you a friendly advice, you better stay away from Rodriguez/Kalb, I probably know something.

3. I've full confidence in Judge Isicoff and I'll wait for her to determine whether Ontario's claim is audulent & criminal and whether to remove the trustee.

2

The other actions by Mukamal in breach of his fiduciary duties are set forth in Mr.

Ofer's attached Affidavit.

## CERTIFICATE OF SERVICE

I HEREBY CERTIFY that on this 16th day of November, 2022, a true and correct copy of the foregoing was served by CM/ECF on all parties listed below.

Respectfully submitted,

*Raz Ofer*

Exhibit A

Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 1 of 61

## UNITED STATES BANKRUPTCURT
## SOUTHERN DISTRICT OF FLORIDA
## MIAMI DIVISION
### www.flsb.uscourts.gov

In re:

942 PENN RR, LLC,

Debtor.

_____/

Case No. 22-14038-LMI

Chapter 11

## DEBTOR'S RENEWED OBJECTION TO CLAIM
## NO. 9 FILED BY 1250916 ONTARIO LTD.

### IMPORTANT NOTICE TO CREDITOR:
### THIS IS AN OBJECTION TO YOUR CLAIM

This objection seeks either to disallow or reduce the amount or change the priority status of the claim filed by you or on your behalf. Please read this objection carefully to identify which claim is objected to and what disposition of your claim is recommended.

If you disagree with the objection or the recommended treatment, you must file a written response WITHIN 30 DAYS from the date of service of this objection, explaining why your claim should be allowed as presently filed, and you must serve a copy to the undersigned attorney OR YOUR CLAIM MAY BE DISPOSED OF IN ACCORDANCE WITH THE RECOMMENDATION IN THIS OBJECTION.

If your entire claim is objected to and this is a chapter 11 case, you will not have the right to vote to accept or reject any proposed plan of reorganization until the objection is resolved, unless you request an order pursuant to Bankruptcy Rule 3018(a) temporarily allowing your claim for voting purposes.

The written response must contain the case name, case number, and must be filed with the Clerk of the United States Bankruptcy Court.

Pursuant to Bankruptcy Rule 3007 and Local Rule 3007-1, the

Debtor, 942 PENN RR, LLC ("Debtor") objects on a renewed basis to Proof

of Claim No. 9 (the "**POC**") filed by 1250916 Ontario Ltd. ("**Claimant**"),

as follows:

**A. POC and Relevant Documents**

1. On August 1, 2022, Claimant filed the POC as secured claim in the amount of

$2,365,193.55.

2. The basis for the POC is listed as a "loan".

3. The Schedule attached to the POC states that the Debtor owes a

total of $1,200,000.00 in principal, plus accrued interest and unpaid

pre-petition default and non-default interest of $1,018,358.88 for a subtotal

of $2,218,358.88.

4. The Schedule also states that Debtor owes Claimant prepetition

attorneys' fees of $143,979.37 and costs of $2,855.30.

5. Exhibit "A" to the POC is a Promissory Note dated October 17,

2017 in the principal amount of $1,200,000.00 with Debtor listed as

borrower and Claimant listed as lender. 6. Exhibit "B" to the POC is a

Mortgage recorded in the Miami-Dade County, Florida public records on

November 2, 2017 on the Debtor's real property located at 942 Pennsylvania

Ave., Miami Beach, FL 33139 (the "**Property**").

7. Exhibit "C" to the POC is an Assignment of Leases and Rents that

was also recorded in the Miami-Dade County, Florida public records on

November 2, 2017. 8. Section 11 of the POC states that the claim is <u>not</u>

subject to setoff. **B. <u>Background Material Facts</u>**

9. Penn RR acquired title to the real property located at 942 Pennsylvania Avenue located in Miami Beach, Florida ("**Property**") in early 2017 through a settlement after negotiations with the previous owner. As a result of the settlement, Penn RR took title to the Property via a Quit Claim Deed, meaning that it took title subject to encumbrances present on the title and without the benefit of a title search being performed. The deed was executed and

2

subsequently recorded on Sept. 27, 2017. Prior to the quit claim deed being issued, the Property was subject to a first lien mortgage from a loan issued and held by Immokalee Real Estate Holdings, Inc. ("**Immokalee**") with a maturity value of $310,000.00. After the conveyance of the Property to Penn RR, it sought additional funding for renovations. It found Ontario to be a willing lender to provide a loan secured by the Property in the amount of $1,200,000.00.

10. The new loan had a proposed closing and settlement date of Oct. 17, 2017 ("**Closing Date**"). To that end, the parties conducted their negotiations targeting a loan closing. On the Closing Date, Penn RR executed a promissory note and mortgage for the loan. The loan was premised on a payment of interest only installments until maturity equal to 9% of the face amount of the loan for a two (2) year period. Those installments would be equal to $9,000.00 per month. Penn RR also had to enlist the aid of its members to guarantee the loan's performance personally. Robert Mendez ("**Mendez**") and Raziel Ofer ("**Ofer**") provided the personal guarantees for the loan. The loan closed and a Final Closing Disclosure was

disclosed the following material aspects of the loan settlement allocations:

   a. Line 5 disclosed "Lenders Fees to Kegan & Associates", Evan

   Kegan, Esq.[1]being the principal of the Florida law firm, in the

   amount of $4,500.00

[1]It is material that Evan Kegan owns and is the principal shareholder of Elite Title Services, Inc. ("Elite"), a licensed Florida Title Insurance Agency and Kegan & Associates ("Kegan Assoc."), a law firm licensed to practice law in Florida. Elite was a licensed agency of Stewart Title Insurance Company.

3

   b. Broker's Fees in the amount of $48,000.00 payable to (i) IRCA

   Capital, Inc. in the amount of $12,000.00 (1% of the loan

   principal) and (ii) Bankers Alternative Funding in the amount

   of $36,000.00 (3% of the loan principal).

   c. An escrow for code violations in the amount of $10,000.00 to

   Elite Title. Section H, Line 3.

   d. An escrow for "Lis Pendens" in the amount of $150,000.00 to

   Elite Title. Section H, Line 4.

   e. An escrow payoff 1 in the amount of $315,000.00 to Elite Title.

   Section K, Line 12.

   f. An Escrow Payoff 2 in the amount of $10,000.00 to Elite Title.

   Section K, Line 2. g. Title Insurance Premiums in the amount of

   $5,575.00, of which Elite Title would be entitled to receive an

   insurance premium commission equal to 70% of the actual

11. The closing assessed $252,025.36 in closing costs to Penn RR which included the escrows included in paragraphs 3 and 4. Additionally, the Escrow Payoffs added an additional $325,000.00 which required that amount also be subtracted and held back prior to any loan proceeds be disbursed to Penn RR. Between the hold backs and Escrows, the net payment that was indicated to be disbursed to Penn RR was in the amount of $622,974.64. This amount is the same amount which is reflective of the Closing Disclosure issued by the Closing Agent and executed by Mendez and Ofer on Oct. 17, 2017.

[2] Traditionally, the Closing Disclosure would identify the recipient of the payoff by name although that did not occur in this case.

4

12. Following the closing, on Oct. 31, 2017, the first disbursement wire was issued by Elite to Penn RR in the amount of $522,974.64 which was directed at Penn RR's account housed by Bank of America. Subsequent wires from Elite to Penn RR, also directed at their Bank of America account occurred on (i) Nov. 15, 2017 in the amount of $100,000.00, (ii) Nov. 15, 2017 in the amount of $2,250.00, and (iii) December 5, 2017 in the amount of $10,000.00. The total amount disbursed to Penn RR from Elite is $635,224.64. there is no indication as to why the delay in the remaining $117,250.00 being disbursed after the initial disbursement on Oct. 31, 2017. No further documentation shows any additional disbursements from Elite to Penn RR. Based on this accounting, there would be still remaining in escrow with Elite $485,000.00 which is reflective in the Closing Disclosure which may be reduced by the overage paid to Penn RR in the amount of

$12,250.00 which is presumptively the wire issued on Nov 2, 2017 for $2,250.00 and the wire issued on Dec. 5, 2017 for $10,000.00. The final accounting number in the escrow with Elite should be reflective of $472,750.00. This would leave Penn RR with a liability to Ontario for the loan proceeds that it received, or the benefits derived from the loan proceeds used to pay the Closing Costs in the amount of $727,250.00, which would constitute the base amount for which all interest and assessment should be calculated against.

13. With the closing occurrence and the funds escrowed, Penn RR began, in earnest, to negotiate its settlement with Immokalee over the first position loan that Immokalee maintained on the Property. Once an agreement was reached, Penn RR inquired as to the payment being made from Elite to Immokalee to obtain a release. It was at this time Elite started to conduct itself in a manner which resulted in a delay of the payment to Immokalee. As a result, Immokalee filed

5

counterclaims for enforcement of its agreement with Penn RR, in an existing action on Dec. 28, 2017, after it did not receive the payment of its loan from the Closing.

14. Penn RR continued to perform its obligations under the Ontario loan, paying the $9,000.00 monthly obligation of interest only payments, despite receiving disbursements far less than the loan amount agreed and bargained to. Such payments continued up and until January 2019 when Penn RR ceased the payments when it confirmed that Elite no longer had its Escrowed sums that were earmarked for payment of the Immokalee loan.

personal use. Ontario, after not receiving any further payments of interest from Penn RR, instituted proceedings to foreclose on the Property.

Circuit Court Litigation

15. Ontario, having failed to be paid any additional interest from Penn RR, filed proceedings in the Eleventh Judicial Circuit of Miami Dade County, Florida to foreclose on its security interest in the Property and seek damages. There, it claimed that Penn RR ceased to make payments as of January 2019. Over the course of that litigation, Ontario was first made aware, at least as far as public records go, of the issue of Kagan embezzling the escrowed funds of Penn RR. The initial complaint was filed on October 16, 2019. During the course of this litigation, Ontario, again seeking the full payment of its loan, took a position that Kagan was simply a escrow agent and title agent for the transaction with Penn RR. During the course of this litigation, the matter was ultimately stayed under the automatic stay issued from the bankruptcy petition filed by Penn RR discussed below.

6

## C. California Litigation

16. In response to findings of embezzlement of the funds to which Ontario has provided to Kagan over the course of their relationship with them and two (2) other entities which a closely affiliated with Ontario, they initiated proceedings against Kagan in the United States District Court for the Central District of California on March 20, 2020. That action brought 4 counts against Kagan. Ultimately, Ontario received a default judgment on its

included express findings that (i) Kagan converted the funds that he held in escrow for Penn RR, and (ii) express findings of representations made by Counsel for Ontario Eric Salpeter, and Arie Lietman, based on sworn affirmations that Kagan served as Attorney, Closing Agent, Title Agent and Loan Servicer for all the loans which were subject of that litigation, which consequently, included the Penn RR loan issued by Ontario. In its final arithmetic awarding damages, that court accounted for the total principal value of the Penn RR loan of $1,200,000.00. The judgment was entered on Oct. 28, 2020. Further, the finding of that court established an unrefuted agency relationship between Ontario and Kagan which was implicit in the awards favoring Ontario.

## D. Bankruptcy Proceedings

17. On May 23, 2023, Penn RR initiated a voluntary reorganization in the United States Bankruptcy Court for the Southern District of Florida. In its disclosure of Creditors, it listed both Immokalee and Ontario, amongst others. The Chapter 11 Plan included payment to Ontario however clearly indicated that the amount of the claim that Ontario possessed was disputed due to the funds which were not disbursed to Penn RR due from Elite. After Ontario filed its claim in

the bankruptcy, Penn RR objected to the claim on Aug. 3, 2022. Ontario claimed that its claim against Penn RR included and owed it under the loan (i) $1,200,000.00 principal payments, (ii) $1,018,358.88 in accrued interest and unpaid prepetition default and non-default interest, (iii) $143,979.37 in

breakout accounting to segregate the interest into its various components. What is significant here is that the interest calculations were based on the full principal amount of the loan. Additionally, the amount of the default interest was calculated at an annualized rate of 25% per annum.

18. Significant inconsistencies existed between the Bankruptcy and California litigation. First, Ontario never displayed candor and disclosed to the Bankruptcy Court that it obtained the federal judgment against Kagan which included the express findings that Kagan was its agent and had embezzled what Ontario believed to be $400,000.00. Second, and just as important, Ontario took a contrary position in the representations that it made in the California litigation where it stated that Kagan was a agent for Ontario, serviced it loans and was its counsel. Ontario even presented charted evidence that the District Court in California relied upon which supported its claims showing that Kagan was charged with collecting all payments related to the loan and has the responsibility to remit those payments to Ontario. This contrary position would indicate that Ontario should be equitably estopped from taking the position in the bankruptcy that Kagan is not its agent since it relied on contrary representations to obtain the judgment from the California Federal District Court.

## E. Discrepancies and Offsets

19. Based on the evidence shown, it would appear that Penn RR

should only be liable 8

for the proceeds it actually received, or benefit derived[3]from the loan from

claim in the bankruptcy, had full knowledge that (i) the proceeds from the loan it issued to Penn RR were to be used to pay Immokalee's first position loan off, whether or not the funds were escrowed for payment after the initial disbursement or not, (ii) that Kagan had embezzled and misappropriated funds that it held in escrow for the benefit of Penn RR and that Penn RR did not, at any point, receive those funds, (iii) that it made the representation to the California litigation court that Kagan was their attorney, closing and title agent along with being the servicer of their loans who had the responsibility of collecting all of the payments that were to be remitted to Ontario and ensuring that Ontario received those payments, (iv) that Penn RR paid interest in the amount of $9,000.00 representing payment on the full principal amount of $1,200,000.00, and (v) that it was charging a default interest rate of 25% per annum on the full amount of the loan, although receiving a judgment based on the fact that Penn RR never received a full disbursement of funds earmarked for the payoff of the Immokalee loan. The sum of $727,250.00 should be the sum used for the base calculations for any accruals or charges as that is the only amount to which Penn RR derived a direct or indirect benefit from.

## F. Enforceability of the Debt

20. The series of events which have taken place call into question the ability of the Ontario loan to be enforced in the State of Florida courts. It would seem that Fla. Stat. §687.071(2) should be examined in detail for the possibility of Usury. Controlling precedents would indicate

---

[3] Here. the benefit derived would be the loan proceeds used to pay costs associated with the loan closing on Oct 17, 2017.

9

that a claim of usury is appropriate in this matter. Given that a loan with a greater than 25% per annum rate of interest cannot be enforced in the courts of this state, examination is warranted. Based on the application of the spreading formula outlined in §687.03(3), the actual amount retained by Kagan, as agent for Ontario with discretion to act within his scope of responsibility, was $472,750.00. When taken as a percentage of the original loan amount, it equates to 39.359% of the total loan amount. The Spreading Formula requires that it be spread over the two (2) stated maturity of the loan. This comes to a rate of 19.697% per year. That percentage is required to be added to the stated loan interest rate as the third and final prong of the calculation which results in a usurious rate of 28.697% per annum, exceeding the 25% rate allowed by law. This does not account for sums being applied to this calculation which include the sums Kagan exacted from Penn RR while acting as a agent of Ontario and profiting personally from his own commissions he earned as title agent and attorney (servicing agent). If these sums are added, the rate will correspondingly increase.

21. Further, intent of this behavior can be seen in the charging of the default interest in the amount of 25% on the entire principal loan balance and not the amount actually received by Penn RR or to which they derived a benefit. If the default interest claimed on the full principal balance remains and is subjected to the Spreading Formula, the default interest rate alone would seemingly cause the interest rate to exceed 25% just by a reduction in the principal amount of $1,000.00 or less. The Ontario loan is subject to the usury law of the State of Florida.

## G. **Ontario's Proof Claim Fails to Mention Any Setoff of**

the following conditions:

> a. The authorized signature serves as an acknowledgment that when calculating the amount of the claim, the creditor gave the debtor credit for any payments received toward the debt.
>
> b. The proof of claim was examined by the authorized signatory who had a reasonable belief that the information was true and correct.

c. Under penalty of perjury, the proof of claim was true and correct.

23. Attached hereto as Exhibit "1" is the Declaration of Eric Salpeter in Support of Ontario's Motion for Partial Summary Judgment in the California Action, which acknowledges that the Debtor did not receive the $400,000 that was stolen by Kagan.

24. Subsequently, the California Court entered a default judgment in favor of Ontario and against Kagan in the amount of $4,218,500.00, trebled to $12,655,500.00 based on funds converted by Kagan, a copy of which is attached hereto as Exhibit "2".

25. On pages 11 and 12 of the default judgment, the California Court found that as part of the damages awarded to Ontario, "Transactions Defendant Kagan is Holding" includes the "$400,000.00 [of the $1,200,000.00 Loan Amount which] falls into this category".

26. As to the other $800,000.00, Ontario states on page 14 of its

"3", that these funds are from "transactions for which the loans have passed maturity and Evan Kagan was obligated to collect and remit the funds to [Ontario], but failed to do so (amounting to $3,470,000.00)."

27. This stolen $800,000.00 from the loan to the Debtor is also set forth on the table attached as Exhibit "A" to the Motion for Default Judgment a copy of which is attached hereto as

Page 12 of 61 Exhibit "4".

28. In the Declaration of Arie Leitman in support of the Motion for Default Judgment, a copy of which is attached hereto as Exhibit "5", as the representative of Ontario, he states that he has reviewed Exhibit "A" and that the information contained in the table was true and correct, in particular Mr. Leitman states, "I confirm that the $9,208.500 identified in stated Exhibit A were actually provides by Plaintiffs to Evan Kagan to provide loans for the purchase of real estate. I also confirm that those amounts were never returned to [Ontario].

29. It is thus the position of the Debtor that Ontario's proof of claim is fraudulent, and possibly constitutes a bankruptcy crime.

## H. Conclusion

30. The Ontario loan is wrought with several issues which renders Ontario's claim defective at best. The sums actual owed by Penn RR to it are overstated in light of equity. The claim does not reflect the procurement of

support the judgment reflecting the conversion of funds earmarked for Penn RR which Elite held in trust. Likewise, Ontario's candor to the bankruptcy court is called into question and they should be estopped in equity from taking a position which is contrary to the previous position taken before the California litigation court. The Ontario loan should have offsets applied or be deemed unenforceable under Florida's usury laws.

**WHEREFORE**, Debtor requests the entry of an order disallowing and striking Proof of Claim No. 9 filed by 1250916 Ontario Ltd., disallowing the claim in its entirety and providing for such other relief deemed appropriate under the circumstances.

12

Dated this    day of November, 2022.

RAZ OFER

**CERTIFICATE OF SERVICE**

I HEREBY CERTIFY that on this 9th day of November, 2022, a true

and correct copy of the foregoing was served by CM/ECF on all parties

listed below.

RAZ OFER

Scott N Brown, Esq on behalf of Trustee Barry E Mukamal
sbrown@bastamron.com,
hharrison@bastamron.com;jmiranda@bastamron.com;kjones@bastamron.c
om;jleggett@bastam ron.com

Heather A DeGrave on behalf of Creditor Marjam
Supply of Florida, LLC
hdegrave@walterslevine.com,
jduncan@walterslevine.com

13

Adrian C. Delancy on behalf of Creditor Immokalee Real
Estate Holdings, LLC adelancy@mrthlaw.com,
ycandia@mrthlaw.com,gruiz@mrthlaw.com,ecfnotices@mrthlaw.com;mrthbkc@gmail.com

Dan L Gold on behalf of U.S. Trustee Office of the US Trustee
Dan.L.Gold@usdoj.gov

Jerry M Markowitz on behalf of Creditor Immokalee Real
Estate Holdings, LLC jmarkowitz@mrthlaw.com,
ycandia@mrthlaw.com,rubio@mrthlaw.com,mrthbkc@gmail.com,gruiz@
mrthlaw.com,marko
witzjr73991@notify.bestcase.com,jmarkowitz@ecf.courtdrive.com

Kenneth L Minerley, Esq. on behalf of Attorney G. Proulx, LLC
ken@minerleyfein.com,
litigation@minerleyfein.com;fileclerk@minerleyfein.com;meghan@minerleyfein.com

Barry E Mukamal
bemtrustee@kapilamukamal.com, FL64@ecfcbis.com

Office of the US Trustee
USTPRegion21.MM.ECF@usdoj.gov

Jackson Pellingra on behalf of Attorney G. Proulx, LLC
jackson@minerleyfein.com

Mark S. Roher, Esq. on behalf of Debtor 942 Penn RR, LLC
mroher@markroherlaw.com,
ECF.markroherlaw@gmail.com;ECF2.markroherlaw@gmail.com

Alan R Rosenberg on behalf of Creditor Immokalee Real
Estate Holdings, LLC arosenberg@mrthlaw.com,
gruiz@mrthlaw.com,jgarey@mrthlaw.com,ycandia@mrthlaw.com,mrthbkc@gmail.com

Eric J Silver on behalf of Creditor 1250916 ONTARIO LIMITED
esilver@stearnsweaver.com,
jless@stearnsweaver.com;fsanchez@stearnsweaver.com;cgraver@stearnsw
eaver.com;mfernand ez@stearnsweaver.com

David Winker on behalf of Stockholder Robert Mendez
dwinker@dwrlc.com

14

# EXHIBIT

# "1"

1

Jesus E. Cuza

(*Pro Hac Vice*) Miami, FL 33131

Rebecca J.  3

Canamero (*Pro*

*Hac Vice*) 701
Brickell
Avenue, 33rd
Floor
2

Telephone:
305.374.8500
Fax:
305.789.7799
4

E-mail:
jesus.cuza@hkl
aw.com

rebecca.caname
ro@hklaw.com
5

HOLLAND &
KNIGHT LLP

HOLLAND &
KNIGHT LLP
6

Robert Barton
(SBN 269455)
John A. Canale
(SBN 287287)
7

400 South
Hope Street,
8th Floor
Los Angeles,
CA 90071
8

Telephone:
213.896.2400
Fax:
213.896.2450
9

E-mail:
robert.barton@
hklaw.com

john.canale@h
klaw.com
10

Attorneys for
Plaintiffs
1250916
ONTARIO
LTD.,
11

BELAIRE
GROUP, LLC,
and 2807 JADE
1, LLC
12

13

UNITED
STATES
DISTRICT
COURT
14

DISTRICT OF
CALIFORNIA
15

16

17

18

CENTRAL

19 20 21 22 23 24 25 26 27 28

vs.

))))))))))))))))))
))))))))Case
No.: 2:20-cv-02630-
RGK-JEM
1250916
ONTARIO
LTD.,
BELAIRE
GROUP, LLC,
and 2807 JADE
1, LLC,

Plaintiffs,

**DECLARATION OF ERIC SALPETER IN SUPPORT OF:**

EVAN KAGAN, an

IDYOUSS KAGAN,
an individual;

Defendants.

**ONTARIO LTD.,
BELAIRE GROUP, LLC,
AND 2807 JADE 1, LLC'S
MOTION FOR PARTIAL
SUMMARY JUDGMENT**

[Fed. R. Civ. P. 56; L.R. 56-1]

Date: June 29, 2020
Time: 9:00 a.m.
Dept.: Courtroom 850
Judge: Honorable R. Gary
Klausner

Action filed: March 19, 2020
Trial Date: Not yet scheduled

follows:
2

1. I give this
declaration in
support of the
Motion For
Partial Summary
3
Judgment by
Plaintiffs
1250916
ONTARIO
LTD., BELAIRE

GROUP, LLC,
and 4
2807 JADE 1,
LLC
("Plaintiffs"). I
have personal
knowledge of
the matters
stated 5
below except for
those stated on
information and
belief, which I

am informed and
6
believe are true.
I could testify to
each of the facts
stated below
under penalty of
7

**DECLARATIO
N OF ERIC T.
SALPETER**
1

I, ERIC T.
SALPETER,
hereby declare
and state as

perjury if called upon to do so.

8

2. I am a Partner with the law firm of Salpeter Gitkin, LLP, counsel for

9

Plaintiffs in Florida.

10

3. As part of my representation of the Plaintiffs in Florida, I contacted Alan Bryce

counsel for 942 Penn RR, LLC ("942 Penn") to determine the status of funds lent by

12

Plaintiff 1250916 Ontario Ltd. ("Ontario") to 942 Penn. In this transaction, Plaintiff

13

loaned $1,200,000 to 942 Penn and Evan Kagan ("Kagan") was hired by Ontario to

14

serve as counsel, closing and title agent, and loan servicer for this transaction.

15

4. On May 18, 2020, I received an email from Grossman, Esq.,

16

counsel for 942 Penn regarding the loan Ontario made. A true and correct copy of

17

the email received from Mr. Grossman is attached hereto as **Exhibit 1.**

18

5. In the email, I was informed that 942 Penn never received $400,000 of

19

the funds that were loaned to it by Ontario. *See* **Exhibit 1**. Specifically, I was

20

informed in the email that, of the $1,200,000 loaned by Ontario to 942 Penn through

21

Evan Kagan, only $800,000 was released to 942 Penn by Kagan; the remaining

22

$400,000 remained in Kagan's trust account. *Id.*

23

6. I was also informed by 942 Penn's counsel that Kagan admitted to Mr.

24

Grossman that he has removed the $400,000 from his trust account. **Exhibit 1.**

25

///
26

///
27

///
28

- 2 -
DECLARATION OF
ERIC SALPETER IN
SUPPORT OF
MOTION FOR
PARTIAL SUMMARY

1      I declare under penalty of perjury under the laws of the United States of

2   America that the foregoing is true and correct.  This declaration was executed

3   20, 2020, in Broward County, Florida.

4

5

6                                                    Eric T. Salpeter

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

#74820100_v2                                          - 3 -

Case 2:20-cv-02630-RGK-JEM Document 36 Filed 05/21/20 Page 3 of 3 Page ID #:583
Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 17 of 61
Case 2:20-cv-02630-RGK-JEM Document 36-1 Filed 05/21/20 Page 1 of 3 Page ID #:584

# Exhibit 1

**From:** Alan Grossman <grossmanlawmiami@gmail.com>
**Sent:** Monday, May 18, 2020 1:45 PM
**To:** Eric Salpeter <eric@salpetergitkin.com>
**Subject:** 942 Penn RR, LLC v. 1350916 Ontario Limited

Mr. Salpeter,

1.      1250916 Ontario Limited ("Ontario") loaned $1,200,000.00 to my client, 942 Penn RR, LLC, ("Penn"), and as security granted a second mortgage to Ontario in October, 2017.  Of the total loan amount of $1,200,000.00, only the approximate amount of $800,000.00 was released to Penn.  The remainder of approximately $400,000.00 remained in the trust account of Ontario's attorney, Evan S. Kagan.  Because there was never an escrow agreement for those funds, the funds could at any time be recalled by my client from Mr. Kagan for immediate payment to Penn.

Since the loan closed, Penn paid full payments due of $9,000.00 per month, being the stated 9% on the stated loan amount of $1,200,000.00, for payments due from October, 2017, through January, 2019.

2.      At the end of 2018, my client began to suspect that Mr. Kagan has removed the escrowed funds of $400,000.00 from his trust account and used it for his private businesses, including growing marijuana and operating a dispensary business in California, mainly in Los Angeles.  My client understands that Mr. Kagan removed the $400,000.00 escrow funds for his own use shortly after the closing of the loan, around November, 2017.  Mr. Kagan has admitted to my client that Mr. Kagan removed the $400,000.00 from his trust account, and told my client that Ontario is responsible to Penn for damages due to the unlawful removal of Penn's funds by Mr. Kagan from his trust account.

3. At the beginning of 2019 my client demanded from Mr. Kagan that he produce evidence that Penn's escrowed funds of $400,000.00 is in Mr. Kagan's trust account, and if that proof is not provided that my client will withhold future interest payments due. Mr. Kagan failed to provide such evidence, as it appears that the escrowed funds had already been removed by him. Despite repeated request from my client to Mr. Kagan, Mr. Kagan never responded. However, more recently Mr. Kagan confirmed to my client that he had indeed removed the $400,000.00 escrowed funds from his trust account.

4 Penn's loan agreement is with Ontario, not with Mr. Kagan, who was then, and may still be, Ontario's attorney. As such, Ontario is responsible for Mr. Kagan's unlawful removal of the escrowed funds as well as fraud.  In turn Ontario likely has a claim against Mr. Kagan, in addition to the action currently pending again Mr. Kagan. As a result of Ontario's liability for it's agent's (Mr. Kagan) action, Ontario will be responsible to my client for all damages incurred, as explained below.

5. Had the $400,000.00 escrowed funds been released to Penn as this saga began in November, 2017, Penn could have completed the gut renovation of its building within 6-9 months.  Instead, the renovation took nearly 3 years to complete as Penn had to stop construction a few times due to lack of funds. As a result, Penn suffered damages for the delay of 25 months to complete the renovation and open it's apartment building.

6. Penn had projected revenue of from it's ownership of 942 Pennsylvania Ave, Miami Beach, to be in excess of $180K per month, as the building also has a hotel license.  Therefore one measure of damages is the amount of $4,500,000. In addition, Penn paid interest to Ontario of $9,000.00 per month, being interest calculated on the total loan amount of $1,200,000.00, even though $400,000.00 of the funds were not available to Penn. The damages calculated by the excess monthly interest

paid at $3,000.00 per month times 15 months,

equals $45,000.00, plus pre-judgment interest.

7. Another measure of damages caused by Ontario's actions relates to the inability of Penn to use that money to resolve the first mortgage on the property. Penn was unable to sell the building related to a bona fide offer received by my client from a third party to purchase the building, because the funds were unavailable to resolve the first mortgage. This resulted in the decreased value of the property by $4,000,000.00, which is the responsibility of Ontario.

8. The total damages incurred by Penn are:  $4,500,000.00 + $45,000.00 (plus interest) + $4,000,000.00 = $8,545,000.00.  With my client's damages increasing daily, and flowing from the actions of Mr. Kagan, your current action against my client is frivolous and should be dropped.

9. My client has indicated that he is willing to meet with you to attempt to work out a settlement of my client's case, and to assist you in your client's pursuit against Mr. Kagan. Mr. Kagan is thriving in Los Angeles with a growing marijuana and dispensary business.

Please let me know when we can arrange to meet to continue to pursue settlement options.

Thank you.

Alan Bryce Grossman, Esq.
Grossman Law Florida, LLC
20900 N.E. 30th Avenue
8th Floor
Aventura, FL 33180
Tel.  786-406-1763
Email: GrossmanLawMiami@gmail.com

3

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 1 of 15 Page ID #:914

Case 22-14038-LMI

Doc 439 Filed 11/07/22

Page 21 of 61

# EXHIBIT "2"

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 3 of 15 Page ID #:916 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 23 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 4 of 15 Page ID #:917 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 24 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 5 of 15 Page ID #:918 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 25 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 6 of 15 Page ID #:919 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 26 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 7 of 15 Page ID #:920 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 27 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 8 of 15 Page ID #:921 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 28 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 9 of 15 Page ID #:922 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 29 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 10 of 15 Page ID #:923 Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 30 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 11 of 15 Page ID #:924 Case 22-14038-LMI Dc 439 Filed 11/07/22 Page 31 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 12 of 15 Page ID #:925 Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 32 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 13 of 15 Page ID #:926 Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 33 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 14 of 15 Page ID #:927 Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 34 of 61

Case 2:20-cv-02630-RGK-JEM Document 62 Filed 09/18/20 Page 15 of 15 Page ID #:928 Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 35 of 61

Case 2:20-cv-02630-RGK-JEM Document 51 Filed 07/31/20 Page 1 of 19 Page ID #:662 Case 22-14038-LMI Do 439 Filed 11/07/22 Page 36 of 61

3
3

HOLLAND & KNIGHT LLP    Telephone: 305.374.8500
1                       Fax: 305.789.7799
1
Jesus E. Cuza (Admitted *Pro Hac*    4
*Vice*) Rebecca J. Canamero (Admitted    E-mail: jesus.cuza@hklaw.com
                        rebecca.canamero@hklaw.com
*Pro Hac Vice*) 701 Brickell Avenue,    5
                        5
33rd Floor              HOLLAND & KNIGHT LLP
2                       6
2                       6
Miami, FL 33131         Robert Barton (SBN 269455)

7
7
400 South Hope Street, 8th Floor
Los Angeles, CA 90071
8
8
Telephone: 213.896.2400

9
9
E-mail: robert.barton@hklaw.com
john.canale@hklaw.com
10

# EXHIBIT "3"

10

Attorneys for Plaintiffs 1250916 ONTARIO LTD.,

11
11

BELAIRE GROUP, LLC, and 2807 JADE 1, LLC

12
12

**IN THE UNITED STATES DISTRICT COURT**

13
13

**FOR THE CENTRAL DISTRICT OF CALIFORNIA**

14
14

))))))))))))))))))))))))))
)CASE NO.: 2:20-cv-02630-RGK-JEM

15
15

1250916 ONTARIO LTD.,

16  16  17  17  18  18  19  19  20      vs.

20  21  21  22  22  23  23  24  24      EVAN KAGAN, an
                                        individual, and SAFAA
25  25  26  26  27                      IDYOUSS KAGAN, an
                                        individual;
BELAIRE GROUP, LLC,
and 2807 JADE 1, LLC,

Plaintiffs,                             Defendants.

**PLAINTIFFS 1250916
ONTARIO LTD.,
BELAIRE GROUP, LLC,
AND 2807 JADE 1, LLC'S
NOTICE OF MOTION
AND MOTION TO
ENTER JUDGMENT BY
DEFAULT AGAINST**

**DEFENDANTS EVAN** 2:20-cv-02638-LMI **DECLARATIONS IN**/22 Page 37 of 71 Judge: Honorable R. Gary
**KAGAN AND SAFAA** **SUPPORT THEREOF** Klausner
**IDYOUSS KAGAN;**
**MEMORANDUM OF** [Proposed Judgment Action filed: March 19, 2020
**POINTS AND** Submitted Concurrently] Trial Date: Not yet scheduled
**AUTHORITIES AND** Dept.: Courtroom 850

27
~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~
JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER 28
28
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATIONS IN SUPPORT THEREOF

TO THIS COURT AND TO ALL PARTIES AND THEIR COUNSEL OF

1

RECORD:

2

PLEASE TAKE NOTICE that on August 31, 2020, at 9:00 a.m., or as soon

3

thereafter as the matter may be heard, in Courtroom 850 of the above-titled Court,

4

located at Roybal Federal Building and U.S. Courthouse, 255 East Temple Street,

5

Los Angeles, CA 90012, Plaintiffs 1250916 Ontario Ltd., ("Ontario"), Belaire

6

Group, LLC ("Belaire"), and 2807 Jade 1, LLC ("Jade 1" and collectively with

7

Ontario and Belaire, "Plaintiffs") through their counsel of record, will and hereby

8

do move the Court for entry of a judgment by default against Defendants Evan

9

Evan Kagan, "Defendants").

This Motion is made on the ground that Defendants have failed to respond to

the Complaint and the allegations of the complaint and the evidence attached

therewith establish that Defendants misappropriated funds belonging to Plaintiffs,

such that Plaintiffs' damages as requested herein are appropriate. This Motion is

made pursuant to Rules 54 and 55, F. R. Civ. P., and is based on the Declarations

of Rebecca Canamero and Arie Leitman attached hereto, the records and files in

this action, and such other materials as may be presented at or prior to the hearing

on this matter.

Dated: July 31, 2020 HOLLAND & KNIGHT LLP

/s/ Jesus E. Cuza

~~Jesus E. Cuza (*Pro Hac Vice*)~~ Rebecca J. Canamero (*Pro Hac Vice*) Robert Barton

John A. Canale

Attorneys for Plaintiffs 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, and 2807

JADE 1, LLC

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

## MEMORANDUM OF POINTS AND AUTHORITIES

1

### I. INTRODUCTION

2

This case arises out of a scheme developed by Defendant Evan Kagan who,

3

in concert with his wife Safaa Kagan, misappropriated over $9 million belonging

4

to Plaintiffs. In particular, for a period of over three years, Kagan convinced

5

Plaintiffs to loan money to borrowers to purchase real property in various

6

transactions where he would act as their counsel, escrow agent, title and closing

7

agent, and servicer. However, those funds were never repaid to Plaintiffs, and

8

were instead stolen by Defendants as part of an unlawful scheme whereby Evan

9

Kagan made numerous false representations, including that the loans had been

10

extended in order to avoid having to remit the repayment to Plaintiffs upon receipt

11

of the same from the borrowers. After discovery of the scheme, Plaintiffs filed this

action against Defendants on March 19, 2020. Both Defendants—despite having

been served with the Complaint and other filings[1]—have failed to make an

appearance or respond to the allegations against them.[2] As a result, defaults were

entered against them and, as discussed below, Plaintiffs are now entitled to a

---

[1] Defendant Kagan accepted service of process through his counsel on April 14, 2020. *See* Plaintiffs' Notice of Acceptance of Service by Evan Kagan [ECF No. 32]; Proof of Service of Dkt. Nos. 32-37 on Defendant Evan Kagan [ECF No. 38]. Defendant Safaa Kagan was personally served with process on June 16, 2020. *See* Proof of Service of Summons on Safaa Kagan [ECF No. 40].

[2] Plaintiffs have given Defendants every professional courtesy and made every effort to allow them to appropriately participate in this litigation. This includes communicating with Defendant Evan Kagan's counsel telephonically and via email to discuss the procedural status of this litigation and serving Defendants with, among other things, the Complaint [ECF No. 1], Plaintiffs' Motion for Partial Summary Judgment," [ECF No. 33] (the "Motion for Partial Summary Judgment"), and the Clerk's Defaults entered against the Defendants [ECF Nos. 46, 48]. *See* Plaintiffs' Notice of Acceptance of Service by Evan Kagan [ECF No. 2]; Proof of Service of Dkt. Nos. 32-37 on Defendant Evan Kagan [ECF No. 38]; Proof of Service of Summons on Defendant Safaa Kagan [ECF No. 40]; Proof of Service of Default Orders [ECF No.

25

26

27

3

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

default judgment.[3]

1

## II. LEGAL STANDARD

2

Under Rule 55(b) of the Federal Rules of Civil Procedure, after the clerk's

3

entry of default against a party, a court may enter a default judgment against that

4

party. Fed. R. Civ. P. 55(b); *see also PepsiCo, Inc. v. Cal. Sec. Cans*, 238 F. Supp.

5

2d 1172, 1174 (C.D. Cal. 2002). In determining whether to enter a default

6

judgment against a party, courts in the Ninth Circuit evaluate seven factors set

7

forth in *Eitel v. McCool*, 782 F. 2d 1470, 1471-72 (9th Cir. 1986). The *Eitel* factors

8

that the Court may consider in deciding whether to enter default judgment are: (1)

9

the possibility of prejudice to the plaintiff; (2) the merits of the plaintiff's

substantive claim; (3) the sufficiency of the complaint; (4) the sum of money at

11

stake in the action; (5) the possibility of a dispute concerning material facts; (6)

12

whether the default was due to excusable neglect; and (7) the policy underlying the

13

Federal Rules of Civil Procedure favoring decisions on the merits. *Eitel,* 782 F. 2d

14

at 1471-72. Notably, "[i]n applying this discretionary standard, default judgments

15

are more often granted than denied." *Philip Morris USA, Inc. v. Castworld Prods.,*

16

Inc., 219 F.R.D. 494, 498 (C.D. Cal. 2003) (quoting *PepsiCo, Inc. v. Triunfo-Mex,*

17

*Inc.*, 189 F.R.D. 431, 432 (C.D. Cal. 1999)) (granting default judgment in both

18

cases). In addition, after a default has been entered, all of a complaint's factual

19

allegations regarding liability are to be taken as true. *TeleVideo Sys., Inc. v.*

20

*Heidenthal*, 826 F. 2d 915, 917-18 (9th Cir. 1987); *Geddes v. United Fin. Group*,

21

559 F. 2d 557, 560 (9th Cir. 1977).

22

³ No Defendant is a minor or infant, or an incompetent person, or in military service or otherwise exempted under the Servicemembers Civil Relief Act, 50

23

24

U.S.C. App. § 521. *See* July 25, 2020 Declaration of Rebecca J. Canamero attached as Exhibit C ¶ 5. Notice has been given to Defendants of the Motion for

25        Default Judgment and the amount requested by Plaintiffs, as required by Central

District of California Local Rule 55-2. *Id.*, at ¶ 6.   26

27

4

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

## III. FACTUAL BACKGROUND

1

From approximately March 2015 through August 2018, Plaintiffs hired

2

Defendant Evan Kagan to act as their legal counsel, escrow agent, title agent,

3

closing agent, and loan servicer for various transactions in which Plaintiffs' funds

4

were loaned to borrowers for the purchase of real property. ECF No. 1 ("Compl."

5

¶ 11. In that capacity, Evan Kagan was to obtain repayment of the loans upon

6

maturity and remit payment of these sums to Plaintiffs. *Id.* Instead, Defendant

7

Evan Kagan, along with his wife Defendant Safaa Kagan, worked in concert to

8

convert and misappropriate these funds. *Id.* ¶ 14. Defendants attempted to conceal

9

their unlawful actions by remitting monthly interest payments to Plaintiffs for the

10

loans (even after maturity) and misrepresenting to the Plaintiffs that the loans had

11

been extended and the borrowers were continuing to pay interest. *Id.* ¶ 13; ECF

12

No. 34 ¶ 9; ECF No. 35 ¶ 9. Contrary to those misrepresentations, Plaintiffs

13

learned later that many of the borrowers had paid the full amount due on the loans

14

to Evan Kagan at the time of maturity, but those amounts were kept by Evan

15

Kagan and never remitted to Plaintiffs. Compl. ¶¶ 14-18; ECF No. 34 ¶¶ 9-10, 13-

16

15; ECF No. 35 ¶¶ 9-10, 13-15.

17

When Plaintiffs confronted Kagan with the aforementioned facts and

18

requested repayment of the funds, Kagan repeatedly promised to begin to transfer

19

funds to Plaintiffs in an effort to start making Plaintiffs whole, but failed to do so.

20

Compl. ¶ 21; ECF No. 34 ¶¶ 16-19; ECF No. 35 ¶¶ 16-21. Instead, Evan Kagan

21

knowingly and intentionally: (i) fabricated one or more "bank documents" and (ii)

22

issued one or more checks without sufficient funds in an effort to give Plaintiffs

23

the false impression that he was taking steps to pay Plaintiffs the amounts that had

24

been stolen from them. *See, e.g.,* Compl. ¶ 22; ECF No. 45; ECF No. 1-5; ECF

25

No. 34 ¶¶ 18-19. On February 27, 2020, Kagan sent a text message to Arie

26

27

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

Leitman (the Manager of Plaintiffs Belaire and Jade 1) to which Kagan attached a

1

photo of an alleged wire transfer receipt for $142,500 to Plaintiff Jade 1. ECF No.

2

34 ¶ 18; ECF No. 34-4. However, these funds were never received. ECF No. 34 ¶

3

18. On March 10, 2020, one of Plaintiffs' counsel received an electronic copy of a

4

letter from Kagan, which included an image of a check for $292,500.00 for loan

5

payoffs. ECF No. 34 ¶ 19; ECF No. 34-5. However, when the check was

6

deposited, the check did not clear for insufficient funds. ECF No. 34 ¶ 19.

7

As alleged in Exhibit A to the Complaint [ECF No. 1-1],[4] Plaintiffs have

8

sustained actual damages in the amount of $9,208,500.[5] Those damages arise from

9

17 loan transactions, which can be classified into three categories: (1) transactions

10

for which Defendants have actually admitted to embezzling Plaintiffs' funds

11

(amounting to $4,218,500 in damages);[6] (2) transactions in which Defendant Evan

12

Kagan participated not only as the attorney, closing agent, and loan servicer, but

13

also personally as guarantor and borrower along with his wife Defendant Safaa

14

15

[4] *Snowden v. Yule*, 217CV2167TLNACP, 2020 WL 1452551, at *3 (E.D. Cal. Mar. 16, 2020), report and recommendation adopted, 2:17-CV-02167-TLN-AC, 2020 WL 1450802 (E.D. Cal. Mar. 25, 2020) ("exhibits attached to a complaint are considered part of the complaint").

16

17

18

[5] In particular, as referenced in Exhibit A, Jade has suffered $292,500 in actual damages; Belaire has suffered $1,111,000 in actual damages; and Ontario has

19

suffered $7,805,000 in actual damages.

20

[6] This amount includes 3,818,500 from loan transactions where Evan Kagan himself has admitted *in writing* that he collected the repayment amounts from the borrowers and misappropriated the funds rather than remit them to Plaintiffs. *See*

21

ECF No. 1-2; ECF No. 35 ¶ 16. In addition, it includes $400,000 from the

22

transaction involving the borrower 942 Penn RR, LLC ("942 Penn"). Plaintiffs recently learned from 942 Penn's counsel that $400,000 of that loan was

embezzled by Evan Kagan from the closing of that loan. ECF No. 36 ¶¶ 4-6; ECF No. 36-1. In

24

particular, those funds, which should have been remitted from Plaintiff Ontario to borrower 942 Penn through Evan Kagan as part of a $1.2 million loan agreement between 942 Penn and Ontario, was instead retained by Evan Kagan (with only $800,000 of the loaned funds being transmitted to the

25

borrower). *Id.*

26

27

6

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

Kagan (amounting to $1,520,000 in damages);[7] and (3) transactions for which the

1

loans have passed maturity and Evan Kagan was obligated to collect and remit the

2

funds to Plaintiffs, but failed to do so (amounting to $3,470,000 in damages). *See*

3

Damages Table, attached as Exhibit A; July 29, 2020 Decl. of Arie Leitman,

4

attached as Exhibit B, ¶¶ 6–7.

5

In addition to the clear and specific allegations as to actual damages in the

6

Complaint (including in Exhibit A, which contains the full amount of damages

7

Plaintiffs have suffered relating to each of the loan transactions), the Complaint

8

states that Plaintiffs have suffered damages that are estimated to *exceed*

9

$4,500,000, exclusive of interest and expenses. *See* Compl. ¶¶ 35, 44, 51, 55.

10

Additionally, the Complaint clearly demands punitive and exemplary damages

11

pursuant to Cal. Civ. Code, § 3294 and three times the amount of Plaintiffs' actual

12

damages, the costs of this lawsuit, and reasonable attorney's fees pursuant to Cal.

13

Pen. Code, § 496, subds. (a), (c). *See* Compl. ¶¶ 42-43. Plaintiffs have undoubtedly

14

provided prior notice to Defendants of the amount sought in this motion, and the

15

judgment sought is not different in kind from that sought in the Complaint.

16

17

$^{7}$ This includes the loan amounts for two transactions. The first transaction

18

involves a $1.2 million loan from Plaintiff Ontario where Evan Kagan not only served as the attorney, closing agent, and loan servicer, but was also the guarantor of the loan in his individual capacity and one of the borrowers of the loan through companies owned by him and Safaa Kagan. Exhibit B ¶ 8. The loan was made to

19

20

Evan Kagan's companies Lake Sana Developments LLC and Vanboo Real Estate

21

LLC and Evan Kagan and Safaa Kagan's company Raresk Holdings LLC along with two other

entities as borrowers. *Id.* The maturity date on this loan has long since passed and all interest

Nevertheless, Evan Kagan and Safaa Kagan
have refused to return these funds.

22

23

The second transaction involves a loan where Safaa Kagan borrowed $320,000 through her

company Safakat, LLC. *Id.* ¶ 9. Although this loan has not yet matured, Safaa Kagan ceased making

interest payments in December 2019. *Id.*

Accordingly, the loan is in default, and Plaintiff Ontario is
entitled to recover the

24

25

full amount of the loan, which Safaa Kagan has not paid. *Id.*

26

27

7

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

### III. DISCUSSION

1

### A. Consideration of the *Eitel* Factors here support entry of a default

2

### judgment.

3

Even a cursory examination of the seven factors set forth in *Eitel v. McCool*,

4

782 F. 2d 1470, 1471-72 (9th Cir. 1986), makes clear that the Court should enter

5

default judgment against Defendants.

6

1. The First *Eitel* Factor: Plaintiffs Will be Prejudiced Without a

7

Default Judgment

8

Under the first factor, a plaintiff may be prejudiced when, in the absence of a

9

*AzGen Sci. Holdings PLC*, No. 18-CV-07503-HSG, 2020 WL 2614778, at *6 (N.D. Cal. May 21, 2020). Here, because the Court preferred not to consider the Plaintiffs' previously filed summary-judgment motion, Plaintiffs have no reasonable or effective remedy to obtain relief against Defendants other than the default judgment requested. Significantly, Plaintiffs fear that every day that passes in this litigation provides Defendants with another opportunity to expend or conceal Plaintiffs' funds, which would leave Plaintiffs "without other recourse for recovery." *PepsiCo, Inc.*, 238 F. Supp. 2d at 1177. Plaintiffs indeed believe that Defendants are in the process of liquidating and hiding their assets with the assistance of coconspirators. *See* ECF No. 25 ¶¶ 25–32.

### 2. The Second and Third *Eitel* Factors: Plaintiffs' Claims are Meritorious and the Complaint is Sufficient

The second and third *Eitel* factors favor a default judgment where the claims are meritorious and the complaint sufficiently states a claim for relief. *See Danning v. Lavine*, 572 F. 2d 1386, 1388-89 (9th Cir. 1978). The Complaint asserts claims for conversion and civil theft against both Defendants and asserts claims for breach of contract and breach of fiduciary duty against Defendant Evan

8

PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807

Kagan. And the allegations of the Complaint (and uncontested evidence) make clear

1

Plaintiffs are entitled to judgment against Defendants. Indeed, as discussed below,

2

Plaintiffs' claims have merit and are sufficiently alleged in the Complaint.

3

(a) *Conversion*

4

Under California law, "[c]onversion is generally described as the wrongful

5

exercise of dominion over the personal property of another. The basic elements of

6

the tort are (1) the plaintiff's ownership or right to possession of personal property;

7

(2) the defendant's disposition of the property in a manner that is inconsistent with

8

the plaintiff's property rights; and (3) resulting damages." *Fremont Indem. Co. v.*

9

*Fremont Gen. Corp.*, 148 Cal. App. 4th 97, 119 (2007). Plaintiffs have pleaded

10

(and provided uncontroverted evidence) that Defendant Evan Kagan, along with

11

his wife Defendant Safaa Kagan, worked in concert to convert and misappropriate

12

Plaintiffs' funds. Indeed, Defendant Evan Kagan's *own admissions* to Plaintiffs

13

and others make clear that he collected and unlawfully retained at least $4,218,500

14

from Plaintiffs' clients/borrowers that he was obligated to remit to Plaintiffs. In

addition, Defendants stole over $1.5 million more in transactions where Defendant

Evan Kagan and/or Safaa Kagan served as borrowers and where Defendant Evan

Kagan served as guarantor (in addition to Defendant Evan Kagan acting as closing

agent, attorney, and loan servicer). Accordingly, the Complaint sufficiently alleges

that Defendants wrongfully exercised dominion over Plaintiffs' funds without

permission, inconsistent with plaintiffs' rights, which resulted in damages to

Plaintiffs. *See Sustainable Pavement Techs., LLC v. Holiday*,

217CV02687WBSKJN, 2019 WL 2483294, at *3 (E.D. Cal. June 14, 2019).

    (b) *Civil Theft*

    The Complaint also properly asserts a "civil theft" claim, entitling Plaintiffs

to treble damages pursuant to Cal. Penal Code § 496(c). Under Cal. Penal Code

9
PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807
JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

§ 496(c), "[a]ny person who has been injured by [theft] may bring an action for

three times the amount of actual damages, if any, sustained by the plaintiff, costs of

suit, and reasonable attorney's fees. Here, Plaintiffs pleaded and provided

uncontroverted evidence that Plaintiffs were injured by Defendants' theft (i.e.,

conversion) of Plaintiffs' funds.

(c) *Breach of Contract*

The Complaint also sufficiently alleges a meritorious claim for breach of

contract against Defendant Evan Kagan. In order to assert a claim for breach of

contract in California, a plaintiff must allege "1) the existence of the contract, (2)

plaintiff[s'] performance or excuse for nonperformance, (3) defendant's breach,

and (4) the resulting damages to plaintiff[s]." *E.D.C. Techs., Inc. v. Seidel*, 216 F.

Supp. 3d 1012, 1015 (N.D. Cal. 2016). Here, the Complaint alleges the existence

of a contract between Plaintiffs and Defendant Evan Kagan wherein Defendant

Evan Kagan was hired to be Plaintiffs' attorney, closing agent, and loan servicer in

numerous transactions in which Plaintiffs lent funds to third party

15

clients/borrowers. The Complaint also asserts that Defendant Evan Kagan

16

breached the contract by embezzling Plaintiffs' funds for Defendants' own use and

17

benefit, and that Plaintiffs have been damaged in the amount of $9,208,500. *See*

18

*NewGen, LLC v. Safe Cig, LLC*, CV1209112RGKJCGX, 2013 WL 12124080, at

19

*3 (C.D. Cal. Feb. 26, 2013) ("Plaintiff sufficiently performed its duties and

20

responsibilities under both contracts while Defendant failed to do so. Plaintiff

21

sustained damages as a result of Defendant's breach. Thus, Plaintiff pled facts

22

sufficient to state a breach of contract claim upon which [default judgment] can be

23

granted.").

24

    (d) ***Breach of Fiduciary Duty***

25

    Finally, the Complaint appropriately asserts a meritorious claim for breach

26

27

10

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

of fiduciary duty against Defendant Evan Kagan. As Plaintiffs' closing agent,

attorney, and loan servicer, Defendant Evan Kagan owed a fiduciary duty to

Plaintiffs. *See Wolf v. Superior Court*, 107 Cal. App. 4th 25, 29 (2003) ("A

fiduciary relationship . . . ordinarily arises where a confidence is reposed by one

person in the integrity of another, and in such a relation the party in whom the

confidence is reposed, if he voluntarily accepts or assumes to accept the

confidence, can take no advantage from his acts relating to the interest of the other

party without the latter's knowledge or consent.") (citations and quotation marks

omitted). Evan Kagan breached that duty by utilizing his position of trust and

confidence to misappropriate Plaintiffs' funds, thereby causing Plaintiffs to sustain

$9,208,500 in damages as a direct and foreseeable result of that breach. *See Naked*

*Biome v. Halverson*, 18CV05456YGRTSH, 2019 WL 2183378, at *8 (N.D. Cal.

Feb. 5, 2019), *report and recommendation adopted sub nom. Biome v. Halverson*,

18-CV-05456-YGR, 2019 WL 2183367 (N.D. Cal. Feb. 25, 2019); *StarNet Ins.*

*Co. v. Jordan Harrison Ins. Brokers, Inc.*, C 16-07108 WHA, 2017 WL 1508867,

15

at *1-2 (N.D. Cal. Apr. 27, 2017) (court granted default judgment where brokers

16

collected premiums under an insurer's policies but failed to remit them to the

17

insurer for whom they acted as agents, finding the "complaint pled facts that

18

defendants were fiduciaries . . . by virtue of their . . . relationship" with the

19

plaintiff, that defendants "breached the fiduciary obligations that they owed" the

20

company, and that plaintiff had provided declarations evidencing damage due to

21

defendants' breach.).

22

            3. <u>The Fourth *Eitel* Factor: The Sum of Money at Stake is</u>

23

<u>Appropriate and Authorized by Statute.</u>

24

Under the fourth *Eitel* Factor, the court considers the amount of money at

25

stake in relation to the seriousness of defendant's conduct. *See PepsiCo, Inc.*, 238

26

27

11

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

F. Supp. 2d at 1176. Here, Plaintiffs' have alleged $9,208,500 in actual damages

1

(not including punitive damages and treble damages as authorized by the civil theft

2

statute) resulting from Defendants' breach of duties, including Defendants'

3

misappropriation, theft and embezzlement of Plaintiffs' funds. The severity of the

4

allegations against Defendants and the evidence presented make clear that

5

Defendants' conduct warrants such damages, which Plaintiffs have indeed

6

suffered. Thus, the specific sum sought is proportionate and tailored to

7

Defendants' misconduct. Moreover, Plaintiffs have established their right to treble

8

damages because the uncontroverted evidence as well as the now admitted

9

pleadings have established that Defendants stole Plaintiffs' funds, and "[a]ll that is

10

required for civil liability to attach under section 496(c), including entitlement to

11

treble damages, is that a 'violation' of subdivision (a) or (b) of section 496 is found

12

to have occurred." *Holiday*, 217CV02687WBSKJN, 2019 WL 2483294, at *4 ("A

13

violation of section 496(a) may, by its own terms, relate to property that has been

'stolen' or that has been obtained in any manner constituting theft or extortion.").

15

Thus, while the damages sought are substantial, the amount requested is supported

16

by appropriate documentation and is based upon an appropriate application of

17

California law. Thus, this factor favors the entry of a default judgment.

18

        4. The Fifth *Eitel* Factor: There is No Dispute Over Material

19

        Facts in This Case

20

21

The fifth factor examines the "possibility of dispute as to any material facts in the

22

case. *Lustig,* 2020 WL 2614778, at *9. Here, not only are there no material facts in

23

dispute, Kagan's own admissions establish he has stolen millions of dollars from

Plaintiffs. Thus, this factor too weighs in favor of a default judgment.  24

25

26

27

            12
~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF
Case 2:20-cv-02630-RGK-JEM Document 51 Filed 07/31/20 Page 13 of 19 Page ID #:674 Case 22-14038-LMI
Doc 439 Filed 11/07/22 Page 48 of 61

        5. The Sixth *Eitel* Factor: Default was not the Result of Excusable

Neglect

The sixth factor considers the possibility that Defendant's default resulted from excusable neglect. *Id.* Here, nothing in the record indicates excusable neglect. Defendants were properly served with the summons and Complaint. In addition, Plaintiffs have placed Defendants on notice of the Clerk's Defaults entered against Defendants and communicated with Defendants' counsel on multiple occasions to discuss this litigation. *See* ECF No. 50. Therefore, it is clear Defendants' failure to respond or litigate this case cannot be attributable to excusable neglect. *United States v. High Country Broadcasting Co., Inc.*, 3 F. 3d 1244, 1245 (9th Cir. 1993) (holding that it was "perfectly appropriate" for the district court to enter default judgment against the defendant that failed to appear in the action).

### 6. The Seventh *Eitel* Factor: The Federal Policy Favoring Judgment on the Merits is not Dispositive when there is a Failure to Defend

The seventh factor emphasizes that "[c]ases should be decided upon their merits whenever reasonably possible." *Id.* Despite the strong federal policy favoring judgment on the merits, the mere existence of Fed. R. Civ. P. 55(b) indicates that

18

at 1177. Here, even considering this preference, the factors weigh heavily in favor of

19

default judgment. Indeed, Defendants' failure to answer or otherwise respond to the

20

Complaint "makes a decision on the merits impractical, if not impossible." *Id.*

21

Notably, the Court has already indicated that it believes a default judgment is

22

appropriate rather than a ruling on the merits. ECF No. 44.

23

### B. The Relief sought by Plaintiffs herein is Appropriate.

24

After determining that the *Eitel* factors favor the entry of default judgment, the

25

Court must look to the relief Plaintiff is seeking. *Id.* Under Federal Rule of Civil

26

27

13

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

1

Procedure 54(c), a "default judgment must not differ in kind from, or exceed in amount,

2

what is demanded in the pleadings." Fed. R. Civ. P. 54(c). In determining damages, "a

3

court can rely on the declarations submitted by the plaintiff." *Id.* " Rule 55 does not

4

5

evidentiary basis for the damages awarded in the default judgment." *Id.*

6

Here, the multiple declarations submitted by Plaintiffs make clear they have

suffered ***actual*** damages amounting to $9,208,500. *See* Exhibit B ¶ 7; ECF No. 24 ¶

7

12; ECF No. 25 ¶ 12; ECF No. 34 ¶ 12; ECF No. 35 ¶ 12. As discussed, those

8

damages are comprised of funds lent in: (1) transactions for which Defendants

9

have actually admitted to embezzling Plaintiffs' funds ($4,218,500 in damages);

10

(2) transactions in which Defendant Evan Kagan participated not only as the

11

attorney, closing agent, and loan servicer, but also personally as guarantor and

12

borrower along with his wife Defendant Safaa Kagan ($1,520,000 in damages);

13

and (3) transactions for which the loans have passed maturity and Evan Kagan was

14

obligated to collect and remit the funds to Plaintiffs, but failed to do so (amounting

15

to $3,470,000).

16

In addition, under Cal. Penal Code § 496(c), "[a]ny person who has been

17

injured by [theft] may bring an action for three times the amount of actual

18

damages, if any, sustained by the plaintiff, costs of suit, and reasonable attorney's

19

fees. Here, Plaintiffs pleaded and provided uncontroverted evidence that Plaintiffs

20

were injured by Defendants' theft (i.e., conversion) of Plaintiffs' funds. Therefore,

21

Plaintiffs are entitled to obtain treble damages pursuant to Cal. Penal Code § 496

22

for those damages that fall within their civil-theft claim. *See id.* With regard to the

23

three categories of damages identified above (and in Exhibit A), there is no

24

question that categories (1) and (2) fall within the civil-theft claims. In particular,

25

those categories represent loans by Plaintiffs that either (1) Defendant Evan Kagan

26

27

14

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

has admitted to stealing or (2) Defendants Evan and Safaa Kagan personally

1

borrowed to purchase property, but never repaid and in fact converted. Thus,

2

Plaintiffs seek treble damages of that amount ($5,738,500),[8] equating to an

3

additional $17,215,500 in damages.[9]

4

Likewise, Plaintiffs are entitled to a discretionary punitive/exemplary award

5

of damages pursuant to Cal. Civ. Code § 3294 based on the non-contractual claims

6

and allegations raised in the Complaint. *See* Cal. Civ. Code § 3294 ("In an action

7

for the breach of an obligation not arising from contract, where it is proven by

8

clear and convincing evidence that the defendant has been guilty of oppression,

9

fraud, or malice, the plaintiff, in addition to the actual damages, may recover

10

damages for the sake of example and by way of punishing the defendant.");

11

*Brantley v. Boyd*, No. C 07-6139 MMC 2013 WL 3766911, at *9 (N.D. Cal. July

12

16, 2013) ("Causes of action for conversion support an award of punitive damages,

13

when conduct is intentional or fraudulent."). To determine whether punitive

14

damages should be awarded, courts in the Ninth Circuit consider: (1) the

15

reprehensibility of defendant's acts; (2) the amount of compensatory damages

16

awarded; and (3) the wealth of the defendant. *Prof'l Seminar Consultants, Inc. v.*

17

*Sino Am. Tech. Exch. Council, Inc.*, 727 F. 3d 1470 (9th Cir. 1984). Punitive

18

19

20

_8 The remaining $3,480,000 of actual damages sought in this motion are damages
resulting from, at

the very least, Defendant Kagan's breach of contract and breach

21

22

of fiduciary duty. Because Plaintiffs do not have concrete evidence that those
amounts were in fact stolen by Defendants rather than retained by, for example, the

borrowers, Plaintiffs do not seek treble damages for those amounts

23

(notwithstanding the multitude of circumstantial evidence suggesting those funds
were stolen as
well).

24

[9] Specifically, the treble damages should be allocated as follows as demonstrated

25

by Exhibit A: $877,500 to Jade, $3,333,000 to Belaire, and $13,005,000 to

Ontario. 26

27

15

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

and convincing evidence that the defendant has been guilty of oppression, fraud, or

1

malice. . . ." In turn, malice is defined as "conduct which is intended by the

2

defendant to cause injury to the plaintiff or despicable conduct which is carried on

3

by the defendant with a willful and conscious disregard of the rights or safety of

4

others." Cal Civ. Code § 3294(c)(1). Similarly, fraud is defined as "an intentional

5

misrepresentation, deceit, or concealment of a material fact known to the defendant

6

with the intention on the part of the defendant thereby depriving a person of

7

property or legal rights or otherwise causing injury." Cal. Civ. Code § 3294(c)(3).

8

Punitive damages are properly awarded "when the tortious conduct rises to levels

9

of extreme indifference to the plaintiff's rights, a level which decent citizens

10

should not have to tolerate." *Latham v. Cambria Co. LLC*, No. SACV160561,

11

2017 WL 125013, at *13 (C.D. Cal. Jan. 12, 2017). "Although, the appropriate

12

ratio of punitive to compensatory damages will vary from case to case, many

13

courts in the Ninth Circuit have found a ratio of three to one appropriate."

14

*Guadarrama v. Chadorbaff*, No. SACV170645DOCJDEX, 2018 WL 5816191, at

15

*11 (C.D. Cal. Apr. 30, 2018).

16

Here, it is abundantly clear that Defendants have perpetuated an intentional

17

fraud against Plaintiffs with extreme indifference to Plaintiffs' rights and/or with

malice. To be sure, Defendant Evan Kagan (a licensed member of the Florida Bar)

19

has admitted to having taken (stolen) $4,218,500 of Plaintiffs' funds. ECF No. 1-2;

20

ECF No. 34 ¶ 16. And he was able to retain those funds (which were remitted by

21

borrowers to be transmitted to Plaintiffs as loan repayments) without Plaintiffs'

22

knowledge by convincing Plaintiffs that the loans had been extended and making

23

false interest payments to support his lies—similar to a ponzi scheme. ECF No. 34

24

¶ 9; ECF No. 35 ¶ 9. Then, even after discovery of the scheme, as the record

25

evidence demonstrates, he continued to perpetuate his fraud against Plaintiffs by

26

27

16
~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF
Case 2:20-cv-02630-RGK-JEM Document 51 Filed 07/31/20 Page 17 of 19 Page ID #:678 Case 22-14038-LMI
Doc 439 Filed 11/07/22 Page 52 of 61

fabricating bank documents and issuing checks without sufficient funds in order to

1

give Plaintiffs the false hope and impression that he was taking steps to pay

2

¶¶ 18–19. Somewhat analogous facts were found to warrant punitive damages under Cal. Civ. Code § 3294 on default judgment in *Mobile Mini, Inc. v. Khordt.* In that case, the court held that the well-pleaded allegations of the complaint, the available evidence, and the statements of the plaintiff's counsel on the record that defendant created false contracts and other documents to conceal his conversion of 39 storage containers from plaintiff demonstrated clearly and convincingly that the defendant was guilty of fraud and malice as defined by California law and that punitive damages in the amount of 3.5 times the amount of the plaintiff's actual damages were warranted under Cal. Civ. Code § 3294. CIVS-05-2458 FCD DAD, 2007 WL 2109224, at *4 (E.D. Cal. July 23, 2007), report and recommendation adopted, S-05-2458 FCD DAD, 2007 WL 2377012 (E.D. Cal. Aug. 21, 2007).

Here, Plaintiffs have presented written evidence and testimony demonstrating at least similar fraudulent and/or malicious conduct but only request that the Court award Plaintiffs 2 times the damages sought in the civil theft and conversion

claims ($5,738,500) as punitive damages, which would equate to an additional

18

$11,477,000.[10] *See also Lewis*, 2019 WL 1571281, at *8 (awarding two times

19

actual damages as punitive damages to be included in default

judgment). 20

### C. Notice of Judgment Sought

21

Plaintiffs have given prior notice to Defendants of the amount sought in the

22

proposed judgment. Namely, the judgment sought is not different in kind from, nor

23

24

[10] The punitive damages should be allocated as follows based on the amounts

25

contained in Exhibit A: $585,000 to Jade, $2,222,000 to Belaire, and $8,670,000 to

Ontario. 26

27

17
~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF
Case 2:20-cv-02630-RGK-JEM Document 51 Filed 07/31/20 Page 18 of 19 Page ID #:679 Case 22-14038-LMI
Doc 439 Filed 11/07/22 Page 53 of 61

does it exceed in amount, that sought in the Complaint. *See* Rule 54(c) F. R. Civ.

1

P. Nevertheless, and in an abundance of caution, Plaintiffs will ensure that

2

Defendants received a copy of this Motion and Plaintiffs Proposed Default

Defendants received a copy of this Motion and Plaintiffs Proposed Default

Judgment prior to the entry of default judgment against them. *See LEDTRONICS,*

*Inc. v. LEDTRONICS, Inc.*, CV1005147GAFFFMX, 2010 WL 11601182, at *8

(C.D. Cal. Oct. 28, 2010); *Appleton Elec. Co. v. Graves Truck Line, Inc.*, 635 F.2d

603, 610–11 (7th Cir. 1980) (holding that when the plaintiff served a proposed

default judgment on the defendant, this amounted "to an amendment of the

plaintiffs' prayer for relief" such that the purpose and policy behind Rule 54(c) F.

R. Civ. P. was thereby satisfied).

### III. CONCLUSION

Based on the demand contained in the Complaint, this Motion, the Proposed

Default Judgment, and the evidence set forth in the accompanying declarations (as

well as those previously filed), Plaintiffs respectfully request that judgment in the

form presented herewith be entered by the Court, including a total award of

**$37,901,000**:

(a) Actual damages in the amount of $9,208,500;[11]

(b) Treble damages for the civil theft claim in the amount of $17,215,500

($5,738,500 x 3); [12] and

19

 

 

 

(c) Punitive damages in an amount of $11,477,000. [13]

20

21

[11] As discussed above, the actual damages should be apportioned as follows among the Plaintiffs:
$292,500 to Jade, $1,111,000 to Belaire, and $7,805,000 to Ontario.

22

23

[12] As discussed above, these damages should be awarded as follows among the Plaintiffs: $877,500
to Jade, $3,333,000 to Belaire, and $13,005,000 to Ontario.

24

[13] As discussed above, the punitive damages should be apportioned as follows
among the Plaintiffs: $585,000 to Jade, $2,222,000 to Belaire, and $8,670,000 to

Ontario. 26

27

18

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

28

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF

Case 2:20-cv-02630-RGK-JEM Document 51 Filed 07/31/20 Page 19 of 19 Page ID #:680

Case 22-14038-LMI Doc 439 Filed 11/07/22 Page 54 of 61 1

2

Dated: July 31, 2020 HOLLAND & KNIGHT LLP

3

/s/ Jesus E. Cuza

4

~~Jesus E. Cuza (*Pro Hac Vice*)~~ Rebecca J. Canamero (*Pro Hac Vice*) Robert Barton

5

John A. Canale

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Attorneys for Plaintiffs 1250916 ONTARIO

LTD., BELAIRE GROUP, LLC, and 2807
JADE 1, LLC

19

~~PLAINTIFFS 1250916 ONTARIO LTD., BELAIRE GROUP, LLC, AND 2807~~

JADE 1, LLC'S NOTICE OF MOTION AND MOTION TO ENTER
JUDGMENT BY DEFAULT AGAINST DEFENDANTS EVAN KAGAN AND
SAFAA IDYOUSS KAGAN; MEMORANDUM OF POINTS AND
AUTHORITIES AND DECLARATION IN SUPPORT THEREOF